| 159 | 365 |
|-----|-----|
| 209 | ²318 |

# Albertina Beihofer *v.* Loeffert et al., Appellants.

*Malicious prosecution—Charge of court—Probable cause.*

In an action for malicious prosecution it is error for the court to charge the jury " if the facts are disputed it is for you to determine whether or not there was probable cause." It is the duty of the court in such a case to instruct the jury what facts will constitute probable cause.

*Malicious prosecution—Advice of counsel.*

In an action for malicious prosecution defendants may prove by the attorney to whom they submitted their case before making the information on which the warrant was issued, that upon their statement he advised the prosecution.

*Advice of justice of the peace.*

It is not competent for the defendant in an action for malicious prosecution to prove that in instituting the prosecution he acted upon the advice of a justice of the peace: Brobst v. Ruff, 100 Pa. 91.

*Malicious prosecution—Evidence—Information.*

In an action for malicious prosecution it is proper to admit in evidence the information on which the warrant was issued for the arrest of the plaintiff.

Argued Nov. 13, 1893. Appeal, No. 120, Oct. T., 1893, by defendants, George Loeffert and John Loeffert, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1891, No. 365, on verdict for plaintiff, Albertina Beihofer. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for malicious prosecution on charge of perjury.

At the trial, it appeared that plaintiff's husband obtained a judgment against defendants for $90 for work in excavating a cellar. Defendants after they had paid the amount of this judgment made an information against plaintiff and her husband for perjury in connection with this judgment. A warrant was issued, and plaintiff was arrested, but at the hearing she was discharged by the alderman.

The court under objection admitted the information upon which the warrant was based. [2]

When Joseph Beihofer was on the stand he was asked:

' Q. Didn't Mr. George Loeffert actually excavate that cel-

lar, and do that work for which he claimed that $90? The contract is for $650. By the Court: We have nothing to do with that." [3]

" Q. Didn't they charge before the Squire that you and your wife had sworn that you did the digging of the cellar, did the extra work? By the Court: Never mind about the extra work, he hasn't said anything about that." [4]

When plaintiff was on the stand she was asked:

" Q. Wasn't your claim that you sued for and swore to $90 for that cellar business? Objected to. By the Court: We want to find out what they charged. She says they swore that they dug the cellar, and she swore she dug it, and they charge her with perjury in so swearing. It is a plain question." [5]

Louis Smith sworn and examined for defendants. " Q. Do you know whether or not Mr. Loeffert had any cellar digging done there? Objected to as leading. By Mr. Patterson: I ask him whether or not he had any cellar digging done? By the Court: It is not whether he dug the cellar or not, but whether he had done any cellar digging. A. Yes, sir." [6]

The court refused to permit defendant to give in evidence the advice of the Squire. [7]

Defendant was permitted to testify, under objection, as to advice of counsel. [8]

By Mr. Patterson: I want to offer to testify myself in this matter. By the Court: It is entirely immaterial, because he says he told Mr. Patterson that this man committed perjury, swore to what is not true, and, if he did, any lawyer would tell him he had a right to make an information for perjury, and if he doesn't sustain what he told Mr. Patterson he has no excuse. [9]

The court charged in part as follows :

" [I confess to being somewhat embarrassed in this case from the fact that there is nothing upon the record that indicates what the allegation or charge is, with reference to the perjury said ·to have been committed by the plaintiff in this action. Neither before the Squire did the information set out what this woman swore to that was not true, nor does the declaration of the plaintiff set out what she swore to. That makes it necessary to leave it to the jury to find, firstly, what she did swear to, and then whether that is true, without anything in the shape

of an allegation on the part of the plaintiff as to what she is charged with having sworn to that was false. If this matter had been brought to our notice before we got into the trial, we would have required the plaintiff to amend the statement so that we would have known exactly what the defendant was charged with. It becomes the more embarrassing in this case, because from one point of view the woman swore to exactly what was true, and from another point of view she swore exactly to what was not true.] [10]

" [The first question for the jury to determine is what she swore to before Squire Eisenbeis. It seems that the parties had some dealings about a house. The defendants in this case built a house for the husband of the plaintiff. It is alleged that $740 was the amount that the defendant was entitled to have. According to the contract, the house was to be built for $650, and there was, as there very frequently is, a claim for extra services ; but the money was raised, some $700 perhaps, from the Building and Loan Association, less the discounts, and the plaintiff herself paid the defendant some $40.00, making $740 which the defendant claims they were entitled to ; $650 under the contract and $90.00 for extra services. At all events, they got the money and retained it. Then the plaintiff in this suit sued them before Squire Eisenbeis for this $90.00 which she said the defendants had got hold of and retained. The defendants do not seem to have contested the case before the Squire, but let it go by default. Judgment was given against them of course, and they subsequently paid the $90.00. After that was done, one of the defendants, John, went before Squire Brinker and made an information against this woman for having committed perjury in swearing to the fact that she dug the cellar ; and that is all we need pay any particular attention to in this case, because that covers everything that is necessary.] [11]

" [The allegation seems to be that she swore that she dug the cellar, and, if she dug it, as a matter of course they were not entitled to the $90.00 which the bill shows they claim for digging the cellar. They got that money, and, whether rightly or wrongly, the Squire gave judgment against them and they paid it. The defendants charge her with committing perjury, but do not say in what. It is not everything that is said un

der oath that constitutes perjury in law. It must be something that is material to the issue, and must be done intentionally and willfully. Now she swore in court that she dug the cellar. It was necessary to make it appear before the magistrate that the defendants' claim for digging the cellar was unfounded, to say nothing of the other extras, and, that appearing to be the case, when the defendants got hold of the money and retained it, if they had not done the work they were claiming to have done, she was entitled to have it back.] [12]

" [Did she swear that she dug the cellar, or simply that she dug at it? The evidence would indicate, and probably you will not doubt, that she dug a great deal of the cellar. There was evidence also tending to indicate that the defendants in this case had dug in that cellar; dug clear out to the back for the purpose of putting in posts. The question was asked him why he did that; that it was not necessary; to which he replied that he was directed to do it by the plaintiff, by her husband. If he was directed to do what his contract did not call upon him to do, of course he was entitled to be paid for it. That brings us to a point: This woman testified substantially, and it is for you to determine, that she dug in the cellar, and perhaps inferentially, and that the others did not dig in the cellar. If she swore that they did not dig in the cellar at all, and if you believe that they did, then she swore to that which was not true. If she swore to what was true, these parties were bound to know it, or ought to have known it, and if they then undertook to prosecute her they did it without any sort of legal excuse. They perpetrated a violation of her rights as much as if some one would go before a magistrate and accuse you of stealing a horse when you knew nothing about it.] [13]

. " [When parties swear that this woman committed perjury, they are bound to know at least that she did swear to that which was not true or which they had reasonable cause to believe was not true, and that brings us back to the question of what she did swear. If the declaration set forth that she swore that they never worked in the cellar at all, that would make the issue, and then the issue would be,—did she so swear, or did they believe she did? But, as the case stands, we have to leave it to the jury as to what she did swear and whether it was true.] [14] . . . .

" [If there was probable . cause, that ends it, and your verdict must be necessarily for the defendant. It does not make any difference what motives a man may have in instituting a criminal proceeding if he has legal excuse, or what is called probable cause for doing it. It does not make any difference that the person may be innocent if he has probable cause for making the information.

" But there is another question. Was this information or criminal proceeding instituted from malice? Want of probable cause is evidence of malice; under some circumstances conclusive evidence of malice, or satisfactory at least, or should be, for the jury. Under other circumstances it is very slight, although it may be, in connection with other facts in the case, (not always) determined by the jury whether it is malice or not.

" If I should make an information against one of you gentlemen for stealing something from me when I had not been robbed at all, of course there would be want of probable cause, because I would be telling that which was not true, and which I had no reason to believe to be true; and there is only one way for accounting for a thing like that, and that is that I was guilty of malice. If my house was robbed and I was informed by respectable parties that some man had been seen late at night coming out of the house with something over his shoulder (as some good friends of mine did within the last two weeks), tied up in a tablecloth, and I, believing that and acting on it honestly, should proceed to enforce the law, or if any other person would make an information on that ground, having been cautious, having known the facts or been informed by credible witnesses of facts which would of themselves justify a jury in at least hesitating long before they could acquit, and probably warrant them in convicting the party charged with the offence, the law would say that that would be an excuse; and it would make no difference what my object was. I might be as malicious as I pleased. I might say I did not care for the property or the public; that I was going to put that fellow in the penitentiary if it cost me a thousand dollars; it would make no difference, if I have probable cause for doing it, what my motives are.] [15]

" If I have no probable cause, it is not necessarily evidence of malice, but if the facts are such as to satisfy the jury, look-

ing at it as we look at men's motives ordinarily, that I must have been influenced to injure or harass a party, that is a case in which the jury would have a right to infer that there was malice.

" [If it was such a case as was fairly and honestly excusable, such that any honest man might or might not make an information and there was no probable cause ; yet if the jury could not see that he had done anything but what was reasonable under the circumstances, even if he had not sufficient reasonable cause— or in other words, if he was not influenced by improper motives, then the jury ought not to find for the plaintiff, because there must be two things, and that I desire to impress on the jury : Want of probable cause and malice. Want of probable cause, if the facts are undisputed, is for the court. Here, if the facts are disputed, it is for you to determine whether or not there was probable cause. If there was not probable cause, then it is for you to determine, in addition to that, whether the defendant's motives were malicious or not. If they were, then the plaintiff is entitled to a verdict. But even if there was no probable cause, if his motives were honest, if he was honestly misled and there was no intention on his part to injure these people, and his only object was to enforce the law, the plaintiff would not be entitled to a verdict. But if you think it was done with an unkind purpose, without that which would justify probable cause, then you should give a verdict for the plaintiff.] [16] . . . .

" [There is another matter that deserves some comment. It is alleged here that the counsel for the defendant advised this. That is denied as to the time at which it was done. The advice of counsel under no circumstances is good, given after the act. Everything that would tend to relieve the defendant from liability for making the information or instituting a criminal proceeding without probable cause, or maliciously, must be done previous to the making of the information. If I make an information against a man for a crime when I have no reason to believe he committed it, no legal excuse, it does not make any difference if I find out the next hour that the man really did commit the offence. That is no excuse for making the information. I should have waited until I had information of it. That merely illustrates the idea of the point of time to which you direct your attention. Did the defendant consult Mr. Pat-

terson before this proceeding was instituted? If he did not, then under no circumstances would it be a defence. He said he did. There is no evidence that he entered into the circumstances of the alleged perjury, but that he said that the plaintiff had committed perjury and Mr. Patterson told him he had a right to make the information. If the plaintiff did commit perjury, that would be a good defence, and the advice of Mr. Patterson would be a protection.] [17]

" [Then there is evidence in the case to indicate that the Squire advised this thing and what was said to the Squire is a matter for your consideration. The advice of a justice or alderman is no excuse for making a criminal information illegally and improperly. · Aldermen and justices of the peace are not elected because of their knowledge of the law; they are not expected to know the law, and the law never intended that they should advise anybody as to their legal rights. They undertake to do it very often and sometimes get into trouble by doing it. But if I go to a justice of the peace and consult with him as to my right to prosecute anybody, and he advises me, it is no protection to me, although I may have told him the exact facts. If I go to a lawyer it is different. He is recognized and held out by the law as an adviser, and if I go to him, give him an honest statement of the facts and he advises me to bring suit in a criminal proceeding, it is a defence, however ignorant the attorney may be, however mistaken, provided that I act in good faith on his advice. The evidence must show that I was influenced by his advice, and did not go to him as a mere cover to protect me in a criminal prosecution. However, all these matters, even the advice of a magistrate, if it was gotten and acted upon by a man who does not pretend to know the law, while it is no justification if he had no legal cause for it, yet it might and ought to be considered by the jury on the question of malice. If a man acts honestly, the advice of a Squire would be no worse than the advice of any other man who is supposed to be reasonably intelligent; and while it may be no excuse for me if I make an information without sufficient probable cause, so far as that question is concerned, yet when it came to a question of what I should pay in damages, or whether I was influenced by malicious motives, it is for the jury to take all the testimony in the case and say whether or not I

was honestly mistaken, acting honestly, although without probable cause, or whether I was acting from malicious motives or not.] " [18]

Verdict and judgment for plaintiff for $391.75.    Defendant appealed.

*Errors assigned* were (1) that the charge was confusing and misleading; (2–9) rulings on evidence; (10–18) portions of charge in brackets; quoting instructions, offers and evidence but not bills of exceptions.

*T. H. Baird Patterson,* for appellants, cited: Newell on Malicious Prosecution, 568; Dietz v. Langfitt, 63 Pa. 239; McCarthy v. DeArmit, 99 Pa. 69; Emerson v. Cochran, 111 Pa. 622; Neall v. Hart,'115 Pa. 349; McClafferty v. Philp, 151 Pa. 86; Mahaffey v. Byers, 151 Pa. 92; Sloan v. Schomaker, 136 Pa. 391.

*Arch H. Rowand, Jr.,* for appellee, cited: Aiken v. Stewart, 63 Pa. 30; Leahey v. March, 155 Pa. 458.

OPINION BY MR. JUSTICE McCOLLUM, December 30, 1893:

This is an action for malicious prosecution, and on the trial of it in the court below the learned judge in his charge to the jury said, "if the facts are disputed it is for you to determine whether or not there was probable cause." It needs no citation of authority to show that this instruction was erroneous, and, as our examination of the charge as a whole has failed to satisfy us that it was harmless, we are constrained by it to reverse the judgment. The charge was somewhat obscure and confusing in the statement of the issue and the review of the evidence, but this was attributable, in part at least, to the unsatisfactory condition of the pleadings and the failure of the parties to clearly specify the testimony to which the accusation of perjury referred.

The learned judge erred in rejecting the appellants' offer to prove by the attorney to whom they submitted their case before making the information on which the warrant was issued that upon their statement he advised the prosecution. It was a clear mistake to characterize and reject this offer as "entire-

ly immaterial," and to state in connection with it that unless they sustained their allegation of perjury they had no excuse for making the information.

We are unable to discover why the jury were told that there was evidence in the case to indicate that the magistrate advised the prosecution and that it ought to be considered by them on the question of malice, when, as the record shows, the appellants' offer to prove that he did advise it was rejected on the ground, as stated by the learned judge, that "the advice of the squire is not evidence." The ruling on the offer was right, the instruction was wrong, and the appellants complain of both, but as the erroneous instruction was in their favor it does not justify a reversal on their appeal.

It was not error to admit in evidence the information on which the warrant was issued for the arrest of the appellee, nor can we say that error was committed in sustaining the objections to the questions contained in the third, fourth and fifth specifications. It seems from the form of the questions and the remarks of the court in reference to them that they were asked on cross-examination, but as the appellants have not printed the testimony we have no means of judging of their relevancy to the examination in chief, or to the issue. We cannot learn from the appellants' paper-book whether the court sustained or overruled the objection to the question contained in the sixth specification, nor can we understand why the appellants complain in the eighth specification of the admission of competent evidence offered by themselves. The ruling upon the offers shown by the seventh specification is fully sustained by the decision of this court in Brobst v. Ruff, 100 Pa. 91.

In accordance with the foregoing views we sustain the ninth and sixteenth specifications of error and overrule the remaining specifications.