# Dennison v. Somerset & Cambria Railroad Company, Appellant.

*Railroads—Diversion of waters in a street—Trespass—Joint tort feasors.*

Where a railroad company in constructing its road changes the grade of a street, diverts the natural flow of the water, and carries the water through a box drain under the road to the land of an adjoining owner, and the water is then carried on to the land of a third person, the railroad company is liable to such third person for injuries sustained, although (1) the owner of the land upon which the water is first thrown consents thereto, and, although (2) the borough has consented to the construction of the drain and may be itself liable for the injuries, and although (3) other landowners may have contributed to the injury by making connection with the gutter so that refuse matter from their properties are carried through the box drain.

Argued May 7, 1902.    Appeal, No. 115, April T., 1902, by defendant, from judgment of C. P. Somerset Co., Sept. T., 1900, No. 104, on verdict for plaintiff in case of Martha E. Dennison v. Somerset & Cambria Railroad Company..  Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover damages for injuries to real estate.    Before LONGENECKER, P. J.

At the trial it appeared that the defendant in constructing its road in Pleasant street in the borough of Somerset crossed Main street at such a grade as to interfere with the natural flow of water.    It constructed a box drain under the road, and carried the water on to the land of Mary Brant who, for a consideration, consented thereto.    The water found its way from the Brant property on to plaintiff's premises causing the injuries for which this suit was brought.

Plaintiff presented the following points:

1. That if the jury shall find from the evidence that the plaintiff is now and has been, the owner in fee, of the real estate described in her statement filed, for the last thirteen years or more, and that said defendant company twelve years ago or thereabouts caused a drain, or ditch, to be constructed from the rear of the building on the lot of Mary A. Brant, in the borough of Somerset, and across said lot and tapped or connected with the drain on the north side of Main street, at the intersection of Main and Pleasant streets, and that said company has ever since maintained said drain, and that by means of the same the waters and filth that collected are thrown upon Main street from time to time, and which before the construction of defendant's drain were wont to flow along the turnpike to Cox's creek, are carried to the mouth of said drain and are thrown upon and caused to flow upon plaintiff's lot, and if they shall further find that said waters, polluted with all manner of filth, have injured her lands and diminished their production and usefulness and have created a stench and foul odors that have caused sickness in her family, and have produced such actual physical discomfort and annoyance as to interfere materially with the enjoyment of her property, have reduced the rental value of her property, caused suffering to plaintiff and her fam-

ily, and entailed expense for medical and other services, then defendant company is responsible for all damages plaintiff has sustained thereby. *Answer:* We cannot affirm the point in the form in which it is written. There are elements of damage claimed for Mrs. Dennison which we have already said to you she cannot recover for, and as a whole we cannot affirm the point for that reason. Apart from that the law stated in the point is correct. [1]

2. That if the jury shall find from the evidence that the defendant company about twelve years ago constructed a drain or ditch from the rear of the buildings, on the lot of Mary A. Brant, in the borough of Somerset, and across said lot, and tapped and connected with the drain on the north side of Main street, at the intersection of Main and Pleasant streets, and have maintained said drain ever since, and that by reason of said drain so constructed by defendant company, the waters commingled with and polluted by the filth that was thrown upon and collected on Main street, between Diamond and Pleasant streets, and which before said diversion by the drain were wont to flow along the turnpike eastward from Pleasant street to Cox's creek are carried by means of said drain to near the boundary line of plaintiff's lot and caused to flow upon plaintiff's premises; then, even if the jury shall find that other persons along Main street have contributed to the pollution of the water by connecting their privy vaults with Main street drain, defendant company is liable for all the damages plaintiff may have suffered, if they shall also find that defendant's drain was the proximate cause of the injury, and without which the injury would not have been done. *Answer:* This is affirmed, subject to what we have said in our general charge. [2]

3. That if the jury shall find that in 1889 the defendant company purchased from Mrs. Brant a strip of ground, through her lot, for the purpose of constructing an underground box drain to carry off the waters and dirt from Main street and other streets of the town, and that it did construct said drain, and that at the time of its construction the dirt of the street consisted of horse manure, the contents of kitchen and washhouse drains, and that the waters of the streets polluted with filth discharged through the mouth of the drain and thrust upon plaintiff's land, created foul odors that were offensive at

the family residence and were a nuisance; and if they shall further find that after establishing the waterworks, the filth of the streets was augmented from the overflow of cesspools, and the contents of water-closets, which added to the plaintiff's discomfort, annoyance and injury, and that the defendant company was informed of this fact and that it allowed the grievance to continue, and after it had full knowledge of the aggravated injury it repaired the drain and has maintained it ever since; and if it shall further find that within the last few years the defendant company constructed a lateral drain from the main drain to or near the private drain at the Trent residence for the purpose of carrying off the filth and polluted water that came through that drain, and which before was thrown upon the right-of-way, then defendant company is liable for all such damage as plaintiff may have sustained. *Answer:* Gentlemen, if you shall find the facts as stated in this point as they are there given, then the point is affirmed, subject to what we have said in our general charge as to the measure of damages and as to the right of recovery. [3]

Defendant presented this point:

3. That if the jury believe from the evidence that the drain across the land of Mrs. Brant was constructed in 1889 to carry off the surface water; that waterworks were constructed in Somerset borough in 1894 by the borough authorities; that after the construction of said waterworks, certain citizens of the borough put up bathrooms and water-closets in their houses and ran the contents of their water-closets and cesspools into the ditch on the north side of east Main street, down through the drain on the land of Mrs. Brant to the land of the plaintiff, thereby causing offensive smells, then there is no liability on part of the defendant company and the verdict must be for the defendant. *Answer:* We must refuse this point, in accordance with what we have already said to you, that though the borough may be liable, it would not excuse the defendant company. [5]

On the measure of damages the court charged in part as follows:

The complaint of Mrs. Dennison is that she was injured by it; that there was such a deposit of foul matter at the point of

discharge as to make the air offensive and the ground soft and swampy, in the manner explained to you; and her complaint is, further, that her land has deteriorated because of the water which is cast upon it or finds its way into her land from the Brant premises. She and other witnesses have spoken of the way in which it affects the comfort of her home on the adjoining lot.

Some proof was offered to show the extent to which the lot was affected in value by this condition of things. But we say to you that is not the way to get at this matter. If you should find there was negligence on the part of the railroad company in maintaining this box drain, and should come to allowing Mrs. Dennison damages for injury, the measure of damages is not the difference between what the property would sell for now and its value prior to this condition. On the contrary, the measure of damages is what it would cost to remedy the injury. It is not an appropriation of any of her land for the use of the railroad company; it is not one of those permanent uses of her property for which compensation should be made, as when land is appropriated under the right of eminent domain, but the measure of damages is what it would cost to remedy the trespass and make compensation for the injury sustained. Because Mrs. Dennison has a remedy, if this is a nuisance, in a court of equity to restrain the railroad company from continuing the trespass and she can stop it. And if she allows it to continue she can recover only such damages as she can show she has sustained and to restore the property as it was before.

Amongst other things she says she suffered considerable discomfort from the foul odors coming from the place where the waters discharge. If you can ascertain what the discomfort of Mrs. Dennison herself is worth, if there is any evidence in the case to show how such value is to be measured, you can take it into consideration. And the same will apply to the suffering which she sustained in any sickness which you can say arose from this alleged condition. You must be satisfied, however, that the sickness came from this cause. Several physicians were on the stand and neither one of them said her sickness came from the condition at the mouth of the drain, but one of them testified that it might have come from that. One said typhoid fever might come from it, or malaria, but no one

has testified that that was her complaint. You cannot compensate Mrs. Dennison, however, for the sickness of the other members of the family. Mr. Dennison is the head of the family and any loss for services would be his and not hers; he would be entitled to compensation for any damages he could prove in that respect in a suit of his own. The same is true as to any physician's bill. She was not obliged to pay it; it was her husband's obligation to do so, as the head of the family, and she cannot recover for it; it was not her loss.

Verdict and judgment for plaintiff for $340. Defendant appealed.

*Errors assigned* were (1, 2, 3, 5) above instructions, quoting them.

*W. H. Koontz*, with him *J. G. Ogle*, for appellant, cited: Chicago, etc., R. R. v. Glenney, 118 Ill. 487; Davidson v. Sanders, 1 Pa. Superior Ct. 432; McMahon v. Thornton, 5 Pa. Superior Ct. 495; Hutchinson v. Clay Twp., 14 Pa. Superior Ct. 546.

*Valentine Hay*, with him *A. L. G. Hay*, for appellee, cited: North Penna. R. R. Co. v. Mahoney, 57 Pa. 187; Wier v. Plymouth Borough, 148 Pa. 566.

OPINION BY BEAVER, J., October 13, 1902:

The drainage of Main street in the borough of Somerset was wont to flow down the gutters thereof to Cox's creek. In building its railroad along or upon Pleasant street in the said borough, the defendant crossed Main street at a grade higher than the street, and thereby interrupted and interfered with the drainage down the said street to the creek. To provide for the drainage above the railroad, a box drain was laid under the road of the defendant and, by an arrangement with the owner of the land immediately adjoining the railroad, the drainage passing through the said drain was deposited upon his land. The defendant owned the land adjoining that upon which the drainage was deposited. Subsequently to the building of the railroad and the construction of the said drain, sundry persons living upon Main street above the railroad made

connections from their bathrooms with the gutters on the street, through which the offal therefrom passed into the drains under the railroad aforesaid and onto the land of Brant adjoining the property of the plaintiff.

The plaintiff brought her action of trespass against the defendant claiming that " 1. The water from the street produced from the rains and the wash and waste water from the residences along the streets were carried by means of this drain onto her land, made it marshy and unfit for meadow or for tillage. 2. The filth which accumulated on the streets and alleys, such as horse manure, decayed vegetable matter and dead cats and rats and, in recent years, the contents of cesspools, etc., were swept by the wash of waters through this drain over upon her lands or in such close proximity thereto that the foul and offensive odors arising therefrom polluted the water and the air around her dwelling, so as to make living there almost impossible." The plaintiff's statement is not printed by the appellant but this claim is taken from the counterstatement in book of the appellee.

It is not denied by the defendant that it constructed and maintains this drain and that it acquired the right from Brant to deposit what passed through it upon his land. It claims, however, that it is not liable in this action for several reasons :

1. " Because of the liability of Brant and wife who, having granted the right to the defendant company to construct the ditch over their land, thereby imposed an easement or servitude upon their land and the duty devolved upon them to take care of any deposit placed upon the land, under the terms of the grant." To this we cannot assent. In Weir et al. v. Plymouth Borough, 148 Pa. 566, it was held that " a municipal corporation is liable for changing, by the digging of ditches for that purpose, the natural course of the water collecting on its streets and thereby throwing it on the land of a private owner, and that the owner of the land, upon which the water is directly thrown, consents thereto does not constitute a defense, if the water necessarily finds its way to the property of the plaintiff and causes injury thereto." The principle is the same here. If the plaintiff suffered the injury, by reason of the deposit of the drainage upon Brant's property, even if Brant were liable, the defendant would be also liable.

2. " Because of the liability of the borough." The exact terms under which the railroad undertook to carry the drainage from the upper part of Main street under its railroad do not appear. The defendant claims, however, that " the borough authorities having permitted the water to be carried from Main street through this ditch and having connected with it, so as to carry the water from the south side of Main street thereto, made it a borough drain and assumed control of and responsibility for it and this is shown by their negotiations with the husband of the plaintiff to construct a ditch over the plaintiff's land and put in pipe to carry the water and other matter to the creek." Admitting the liability of the borough, the defendant is not relieved of liability for any injury done to the plaintiff. The building of its railroad interfered with the natural and usual drainage of Main street. In order to provide an outlet for that part of the street above its road, this ditch was constructed and for its construction and maintenance and whatever injury was caused thereby it is liable. It is possible that the borough is also liable but this does not relieve the defendant. It voluntarily constructed and voluntarily maintains, for its own benefit and convenience, the drain through which the damage of which the plaintiff complains was done. The principle of North Pennsylvania Railroad Co. v. Mahoney, 57 Pa. 187, and Faust v. P. & R. Ry. Co., 191 Pa. 420, is not precisely applicable. It is rather the converse of the proposition maintained in those cases which governs here, but the principle of joint negligence and, consequently, of joint tort feasors is therein distinctly recognized, and that is sufficient to fix the liability of the defendant.

3. " The liability of the citizens who caused the alleged injury." It follows, from what has been said, that the plaintiff was not bound to seek a remote cause nor to pursue those who were remotely responsible for at least a portion of the damage which she suffered. The defendant cannot hide behind any number of wrongdoers and cannot evade its liability by charging others with wrongdoing, for which they might or might not be legally liable. It might be difficult to measure the amount of damage which the alleged wrongdoers caused or to which they contributed respectively. In McCarthy et al. v. DeArmit, 1 Penny. 297, it was held that " in trespass all the

defendants are alike guilty and each is liable for the damages sustained, without regard to the different degrees of guilt and that, when exemplary damages are claimed, the jury should be instructed to assess them according to the acts of the least guilty of the defendants." But where compensatory damages are claimed, the rule is different and was stated in Huddleston v. Borough of West Bellevue et al., 111 Pa. 110: "If the injury be their joint act, the plaintiff is entitled in a suit against both to recover the full amount of loss she has sustained. For a tort committed jointly the law will not apportion the guilt or responsibility of the tort feasors but holds them all for what the most culpable ought to pay." Whether the wrong complained of by the defendant was a joint tort, for which more than the defendant is responsible, is immaterial in this issue. The suit is against one and, under the cases already cited, the plaintiff had the undoubted right to maintain it.

4. The size of the drain and the purpose for which it was erected have little to do with this case. The drain was large enough to permit the damage complained of and, whether intended or not, it was done and generally, in a civil action, results rather than intentions govern.

We have followed the course of the appellant's argument instead of considering the specifications of error separately. Viewing the whole case, however, there is nothing in the answers to points or the charge of the court which warrants our interference.

Judgment affirmed.