MacHolme *v.* Cochenour, Appellant.

Argued April 28, 1933.

Before Trex-
ler, P. J., Keller, Cunningham, Baldrige, Stadtfeld,
Parker and James, JJ.

*William S. Doty,* and with him *Thomas A. Thornton*
of *Doty & Thornton,* for appellants.

*Louis Vaira* of *Albo, Vaira and Catanzaro,* for ap-
pellee.

Opinion by Cunningham, J., July 14, 1933:

This was an action in trespass for an excessive dis-
tress brought by the tenant, Margaret MacHolme,
against her landlady, Margaret Cochenour, the con-
stable who executed the warrant, Valenson, and Pat-
ton, a police officer who assisted the constable. The
statement of claim averred that the distress warrant
was issued in the amount of $70, as rent for the months
of May and June, 1930, of a restaurant, that the con-
stable and the police officer demanded the payment of
this sum from the plaintiff on June 28th of that year,
although there was no rent due at that time; that the
plaintiff refused to pay and that the officers thereupon
levied upon all the goods on the premises, ejected

plaintiff, locked the doors and posted a public notice of distraint for the $70. It was further alleged that the action of the defendants in proceeding with the distraint caused another creditor of the plaintiff to levy upon and sell all her goods at a sheriff's sale.

It was conceded at the trial that plaintiff on June 28th owed $35 rent for the month of May, but it was also admitted by defendants that the distress for the sum of $70 was excessive, as the rent for June was not due until July 1st. There was testimony by plaintiff and her witnesses that she tendered to the constable and the police officer a check for $35 to cover the May rent; that they refused to accept it, ejected her from her store, and posted the premises. The defense was that Valenson and Patton had offered to accept the check, upon learning it was the amount actually due, but that plaintiff had refused to tender it. It was admitted that although Mrs. Cochenour, the landlady, issued the warrant she was not present during its execution.

The trial judge properly instructed the jury that defendants could not be charged with any loss suffered by plaintiff through the levy, on July 1st, by another creditor, and that the actual damages for the excessive distress must be confined to the loss of use of the property between the date upon which it was distrained and July 1st. He also charged them that they might award punitive damages against one or more of the defendants if there were actually present circumstances of aggravation and a wilful or wanton disregard of the plaintiff's rights in the execution of the warrant.

The jury tendered the following written memorandum as their verdict:

"We, the jurors empanelled in the above entitled case, find a verdict in favor of the plaintiff for four hundred fifteen dollars ($415).

Fifteen dollars ($15) compensation damage from Mrs. Cochenour

Two hundred dollars ($200) exemplary damage from Constable W. V. Valenson. Two hundred dollars ($200) exemplary damage from Police James Patton."

The verdict slip shows that a line was drawn through the words "a verdict in favor of . . . . . . for four hundred fifteen dollars ($415)." According to the recollection of counsel upon both sides, the trial judge drew his pen through the words crossed out and the verdict was then read to the jury by the prothonotary, and acknowledged by them as their verdict, commencing with the words "fifteen dollars ($15)" etc. The docket entries also show that separate verdicts were rendered against each of the defendants in the amounts above indicated. At some subsequent time the word "stet" was written between the two lines crossed out on the jury slip and the trial judge, who also wrote the opinion below, states therein that the word "stet" is in his handwriting and that the actual verdict must, therefore, have been as it originally appeared upon the verdict slip.

Subsequently, but before the entry of any judgment, the verdict against Mrs. Cochenour for $15 was paid and satisfied of record. Thereafter, the other two defendants, Valenson and Patton, presented a motion for judgment n. o. v., which motion was refused and separate judgments entered against each of these defendants in the sum of $200. Two appeals were thereupon taken to this court, the one at No. 214, April T., 1933, in the names of all three defendants, and the other a separate appeal in the name of Patton alone. Mrs. Cochenour has filed a disavowal and severance at No. 214.

We have concluded that the judgments against Valenson and Patton must be reversed. The action

was brought against the three defendants jointly. It is elementary law that where there is such a joint suit, there must ordinarily be but one verdict and one judgment against all the defendants. As was said in McCarthy v. De Armit, 99 Pa. 63, 72: "In trespass all the defendants are alike guilty, each is liable for the damages sustained without regard to the different degrees or shades of guilt; the damages are not divisible, and the verdict should be for one amount against all the defendants, for such sum as the most culpable ought to pay." It is true that the Joint Suit Act of June 29, 1923, P. L. 981, provides that where several defendants are sued jointly, plaintiff may obtain judgment against one or more although not all are liable. This act, however, does not authorize the entry of several judgments. It merely provides a means of eliminating such of the defendants as are found not to be involved in the joint tort: Lang et al. v. Hanlon, 302 Pa. 173, 178, 153 A. 143. But one verdict and one judgment is entered against such of the defendants as are ascertained, after trial, to be jointly liable.

In view of this rule, it was error to enter separate verdicts and separate judgments in the present action. It is also immaterial whether the interpretation of counsel or that of the trial judge as to the actual verdict should prevail. Even though a verdict may have been rendered in the sum of $415, the action of the jury in indicating the amount of damages assessed against each defendant clearly shows that the sum of $415 was not a joint verdict against the three defendants, but the sum of three separate verdicts; and all the trial judge could properly have done would have been to reform the verdict in accordance with the real intention of the jury. Appellee realizes the force of this and seeks to avoid its consequences by asserting that it was proper to render separate verdicts be-

cause the trespasses committed by the several defendants were separate and distinct. The fallacy of this argument is that, if they were separate and distinct torts, each tortfeasor should have been sued separately, since there must be a concert of action or common design upon the part of several defendants to authorize a joint suit. It is true that where an action in trespass is brought against more than one defendant and plaintiff is allowed, without objection from the other side, to introduce evidence of several trespasses on the part of each defendant, it has been held that the jury may bring in separate verdicts against each, in which case plaintiff must elect against which of the defendants he will enter judgment: Leidig v. Bucher, 74 Pa. 65; Chambers v. Lapsley, 7 Pa. 24; Weakly v. Royer, 3 Watts 460. In the Chambers case an action in trespass for mesne profits was brought against a landlord and tenant jointly. Damages were assessed severally by the jury but judgment was entered only against the landlord. The reason behind this rule is a practical one. Technically, where one joint tort is alleged but one should be proved. However, if defendants permit evidence of several torts to go in without objection, they cannot complain if the jury be allowed to consider more than one trespass; and defendants are not prejudiced, since plaintiff is forced to elect to stand on only one of the verdicts. Even if, therefore, the verdict of the jury here be considered as establishing three separate trespasses, plaintiff is no better off because, by marking satisfied the verdict against Mrs. Cochenour, she has made her election and cannot also proceed against the other two defendants. If, on the other hand, the verdict be considered a joint one against all three defendants, plaintiff has equally lost her right to proceed against Valenson and Patton since it is established that the release of one joint tortfeasor is a release of all: McShea v. McKenna et al.,

95 Pa. Superior Ct. 338. There the trial judge in an action of trespass wrongfully instructed the jury that they might assess damages, one-half against each of the two defendants. Plaintiff settled with one of the defendants and marked the judgment against him satisfied; this court held that the release of the first defendant automatically released the other. In view of the anomalous way in which the verdict here was entered, there cannot be said to be a joint verdict in any real sense of the term; plaintiff is impaled upon the horns of a dilemma, and, under either construction, the judgments against Valenson and Patton cannot stand.

We are less hesitant in coming to our present decision because plaintiff, having chosen to include Mrs. Cochenour in her action, has lost nothing by the subsequent errors in procedure. Even had the verdict been properly molded by the trial judge, under no theory could plaintiff have been entitled to more than $15. The verdict of the jury established the fact that Mrs. Cochenour, the landlady, was not liable for punitive damages. Hence, such damages could not have been awarded here, because, in contrast with the rule as to compensatory damages, they must be assessed according to the guilt of the most innocent of the defendants. If any one of the defendants is liable only for compensatory damages, as has been found to be the case with Mrs. Cochenour, no punitive damages could properly be included in the award; nor could a separate award of punitive damages be made against one or more of the defendants, since there can be only one verdict. This was definitely declared in the case of McCarthy v. De Armit, supra, p. 72, and, at least in this state, has never been departed from. In that case the Supreme Court said:

"Two persons may be liable, one for punitive damages, and the other only for compensatory. As where

the plaintiff was arrested by a police officer, and another, one acting in good faith and the other maliciously, the true criterion of damages is the whole injury which the plaintiff sustained from the joint trespass. In such case, if the plaintiff means to get exemplary damages, he should proceed against the party which ought to be punished in that way: Clark v. Newsam & Edwards, 1 Exc. 130. Under the evidence in this case, the jury should have been instructed, as respects exemplary damages beyond compensation for the injury done to the plaintiff, to assess them according to the acts of the most innocent of the defendants, and if any defendant was not liable for exemplary damages, none should be included in the verdict, for the question was as to the motives of the defendants.'' The rule is reaffirmed in Huddleston v. Borough of West Bellevue, 111 Pa. 110, 123, and again referred to in Dennison v. Somerset & C. R. Co., 21 Pa. Superior Ct. 248, 255. Since, therefore, the verdict should have been for a single amount, it could only have been for $15; it would have been manifestly unfair to charge the landlady with an aggravation of damages to which she was not a party.

Separate judgments were entered against Valenson and Patton, respectively; separate appeals were therefore required. Appellants have protected themselves in this connection by taking not only a joint appeal but also a separate appeal in the name of Patton alone. They have asked in their brief that, if separate appeals were necessary, the appeal in No. 214 be treated as that of appellant Valenson alone, leaving Patton's individual appeal in No. 215 to apply as to the judgment against him, and they will be so considered. We sustain the first and fifth assignments of error.

The judgments against Valenson and Patton are severally reversed and judgments are here entered in their favor.