### Layton v. Bower

*Wilson A. Wert,* for plaintiff.
*R. S. Bachman,* for defendant.

HENNINGER, J., March 4, 1935.—Defendant, plaintiff's landlord, issued a distress warrant to one Monte on May 4, 1934, to recover $162 rent due. Monte levied on plaintiff's furniture and had it removed to a storage warehouse. Other goods, such as cooking utensils and materials, clothes and odds and ends, were removed by Monte to the rear porch and yard and left there for 4 or 5 days and then also removed to a warehouse. Monte testified that plaintiff's wife had requested the placing of the goods on the back porch and that she knew they had not been levied upon. This is denied by plaintiff's wife, and the denial is corroborated by his mother who was present at the time of the distraint.

Shortly after the removal of these goods a rain and

wind storm arose and there is testimony that the rain reached these goods and that they were all "water soaked", though the extent of any damage was not shown. Either just before or after the rain started, the defendant, who had been around the corner during the levy, arrived with a carpenter to padlock the doors. Seeing some goods in the back yard, he and the carpenter placed them on the porch. While so engaged he had a conversation with the plaintiff's wife who had sought shelter next door, which conversation, however, sheds no light upon defendant's claim to the goods or the understanding of plaintiff's wife in relation to them.

A week or two after the levy, plaintiff called at the warehouse and took with him some articles of wearing apparel which had been left in bureau drawers. He denied that this included any of the goods left on the back porch. At that time he was told that he could have all of the furniture returned free of storage and moving to any place he might direct. Plaintiff denies this but is very evasive in his denials. In any event, a paper dated a week after the distraint with the signature of the bailiff typewritten thereon and notifying plaintiff of the abandonment of the distraint was delivered to plaintiff's counsel on May 29, 1934. So far as the record shows, all of the goods are still in the warehouse.

On May 25, 1934, plaintiff sued defendant in trespass for $1,316.05 of which $816.05 was for furniture and $500 for inconvenience to himself and family and shock to his wife. Plaintiff testified to the cost and present value of his goods as to which defendant's counsel cross-examined. No other evidence of value or damages was offered on either side.

The court, after reviewing the occurrences on the day of the distraint, instructed the jury that the landlord had the right to abandon his distraint and that in any event no damage had been shown for loss of use or for inconvenience, and that since there had been no sale, the value

of the goods was not the proper element of damage, thus eliminating from their consideration all of the goods except those originally left on the back porch. As to those, the court permitted the jury to determine whether they had been distrained upon, charged that if not and if the bailiff had removed them without authority then to determine whether the landlord had ratified their unlawful removal and that if either levied upon or placed in a precarious position with landlord's ratification, so that they became unfit for return as removed, a conversion had taken place and defendant was liable for their value as found by the jury. The court did not permit a set-off for rent due. The value of the goods on the back porch, according to the testimony, was about $318. The verdict was for $300.

Defendant has filed motions for a new trial and for judgment n. o. v. and argues: (1) the court's charge is confusing; the court erred (2) in permitting the jury to find ratification of an act beyond the bailiff's power, (3) in permitting the jury to find conversion, (4) as to the measure of damages, and (5) that the verdict is excessive.

The charge is not a model and one would not like to have it as one's sole monument. The court did not realize at first that there was no evidence upon which to base a verdict if the whole distraint was unlawful for failure to read the warrant. This error, however, was harmless, for we clearly instructed the jury that they could not base a verdict upon any articles save those on the back porch.

While it is true that the landlord is not responsible for the acts of his bailiff beyond the powers given in the warrant or beyond his oral instructions, the landlord is responsible for all acts done pursuant to the warrant. The jury has found that the goods on the back porch were placed there without the consent or request of the plaintiff or his wife.

If levied upon and removed, the duty to protect arose

at once, was a duty of the landlord, and the jury found it to have been violated. The failure of the bailiff to list these goods is not conclusive as to levy. It might prevent sale but it is a breach of duty in relation to the goods after distraint for which the landlord would be liable.

If removed without levy, without instruction from the landlord, and without the consent and request of the tenants, then ratification would be necessary to hold the landlord. Granting that the landlord must have full knowledge of the facts before his acts of dominion can be held ratification, the jury had these facts upon which to base a finding. The landlord was in the vicinity during the entire levy. He had issued a warrant for the collection of rent and not for the possession of the house, yet he brought with him a carpenter to padlock the house after the distraint was complete. He must have contemplated, therefore, that the bailiff would remove not only distrainable or valuable goods but exempt and inconsequential or perishable articles as well, so as to make continued occupation of the house not only inconvenient but absolutely impossible. If defendant did not intend to exercise dominion over the goods, he might have so indicated in his conversation with plaintiff's wife on the day of the distraint.

In stating the measure of damages to the jury, the court may have used the word "conversion" in too broad a sense and beyond its technical meaning. If the measure of damages is correct, however, we are not concerned with exact definition of the acts which bring that measure of damages into operation. The court instructed the jury that if defendant, through his acts, was unable to return the goods in an acceptable condition, he was liable for their value. Defendant contends he would be responsible, at most, for the damage done them.

Here we meet the most difficult part of the situation. Cases are abundant where goods are sold, for there the measure of damages is the value of the goods when taken:

Perrin v. Wells et al., 155 Pa. 299; Brown et al. v. Stackhouse et al., 155 Pa. 582.

Cases are equally abundant, where no sale is had and where the tenant has simply been deprived of the use of his goods, where the measure of damages is the loss of the use: MacHolme v. Cochenour, 109 Pa. Superior Ct. 563.

We have been unable to find a case where the tenant receives back damaged goods. It may be that where the damage consists merely of broken parts easily replaced, giving the tenant an article as good as ever, the measure would be loss of use plus damages done to the goods while they were in the landlord's custody. Where, as here, the goods consisted of foodstuffs (subject to decay), clothes (subject to mold, moth, shrinkage and running of colors), kitchen utensils (subject to rust), all mixed together and water-soaked, then removed to storage, the damage or injury was beyond repair. Plaintiff was not compelled to take back goods which, though the identical articles, were in altogether different condition than when taken from him. When the landlord undertook to exercise dominion over the goods, he did so at his peril. Being unable to return them as found, he is responsible for their value just as if he had converted them into money.

We cannot say that the verdict is excessive. It is based on very unsatisfactory opinion evidence, that of the owner himself without any special qualifications to determine the values. That, however, is competent evidence, is the only evidence in the case, and is uncontradicted. We cannot allow our private opinion of value to override a verdict based upon competent evidence. We must remember that the measure of damages is not second-hand value, but value to the owner at the place where taken, and that is exactly the value given: Perrin v. Wells et al., supra.

We are convinced, however, that we should have permitted a deduction for the amount of rent due. This is not upon the theory that set-off is permissible, but on the theory that plaintiff can recover only to the extent to which

he was damaged. In so far as the goods were subject to distraint, plaintiff has not suffered. He would have had to part with those goods in any event. His loss begins with the destruction of or irreparable damage to goods in excess of those necessary to satisfy the distraint. The amount of rent due is not disputed: Fernwood Masonic Hall Assn. v. Jones, 102 Pa. 307; Bisk Candy Co. v. Stout et al., 289 Pa. 369.

While both above cases are instances where an excessive levy was made, there is no reason why they should not apply to this case. They are distinguishable from the cases where there was no rent due, where the goods distrained upon were not subject to distraint, hence not answerable for the rent or where the tenant issues a replevin action and is entitled to a return of the goods themselves.

Now, March 4, 1935, the motion for judgment n. o. v. is denied and rule therefor discharged. Plaintiff, Thomas S. Layton, is required to remit all of the verdict in his favor above the amount of $138 and in default thereof defendant's motion for a new trial will be granted and the rule therefor made absolute.