Reby et ux. *v.* Whalen, Appellant, et al.

Argued April 29, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harry M. Jones,* for appellant.

*Francis Taptich,* for appellee.

OPINION BY CUNNINGHAM, J., July 18, 1935:

This is an action in trespass, brought by Michael Reby and his wife Elizabeth, to recover damages for the malicious institution of a prosecution; their allegation was that a search warrant had been issued without probable cause and their home ransacked, with resulting damage to their reputations; punitive, as well as compensatory, damages were claimed.

The defendants are John Liptak, a patrolman, who reported that the plaintiffs were illicitly manufacturing liquor, and John J. Whalen, the Chief of Police of the city of McKeesport, who swore to the information and complaint upon which the search warrant was issued. Following the issuance of the warrant, a number of plainclothes men entered the home of the plaintiffs and searched it unsuccessfully for liquor. No arrests were made and no further action was taken. Thereupon, this joint action was instituted against the two police officers. The jury returned a verdict of $300 against Whalen as compensatory damages, and $700 against Liptak as punitive damages; separate judgments were entered upon the verdicts, after motions for judgment n. o. v., or a new trial, had been denied. Whalen alone has appealed.

The form of the verdict is not in accordance with the principles of law applicable to the trial of an action of this nature, in that it attempts to award puni-

tive damages against one joint defendant and compensatory damages against the other. In MacHolme v. Cochenour et al., 109 Pa. Superior Ct. 563, 167 A. 647, we considered this matter at length and need not repeat what was there said. It is indicated in the opinion of the court below that it would have molded the verdict into one in favor of the plaintiffs for $300 (the amount of the compensatory damages) against the defendants jointly, if it had not been for a stipulation made by counsel for the respective parties during the trial. That stipulation was to the effect that, in the event of a finding for plaintiffs, the jury might render a verdict "against both defendants separately, naming the amount of [the] verdict against each." Such stipulations are obviously dangerous for the defendants in an action based upon a joint tort and in many instances might result in giving a plaintiff a double recovery. It is much safer to follow established principles. Under all the circumstances here present, we shall disregard this irregularity in procedure and dispose of the appeal upon its merits.

We think appellant's motion for judgment in his favor notwithstanding the verdict was properly denied. His contention is that the record contains no evidence from which a jury could reasonably be permitted to find want of probable cause. We cannot agree with that suggestion.

Appellant's story was that upon several occasions he had been advised by Liptak that liquor was being manufactured at the plaintiffs' home, and also that he had received from Liptak's immediate superior the following report: "Chief I got complaint about 617 Watter St., cooking and making mooney Liptack tells me that they going at a grate rate and have been for some time that is the last part of the brick house. [Signed] Lt. Eckels."

These excerpts from appellant's testimony present

his version of the incidents: "A. Well, to my recollection, about ten days or so before the date we made the search there—the search was made July 12th. I would say about ten days previous Officer Liptak came into my office and told me about a lot of drunken people coming out of this place at 617 Water Street, and also about a man who told him that the people in that house at that number were making moonshine. I told the officer, 'You live in that neighborhood, about a block away'—and I also knew that he was on that beat. I said, 'You ought to be able to get your Lieutenant and make a raid.' Again he met me and told me—Q. Did you do anything then? A. No, I told him to be sure and let me know. About four days before July 12th Officer Liptak again told me there should be something done, there is a lot of drunken people coming out of there. He also said another fellow told him about moonshine being made. I said, 'Do you know who the fellow was, and also the woman?' He said he didn't know them but knew them to see them. I said, 'Give me the reports' and on July 11th, on a Friday, the report was on my desk, submitted to me by Lieutenant Charles Eckles, and on that particular day I was in criminal court on a case and I couldn't do anything that day but on the following day— morning—with the report I had, I had the magistrate make the information. I had five informations made that day for different searches and I immediately detailed a squad of city detectives, ...... They went down on my orders with that search warrant. They came back and said they had no trouble and did not find anything."

This testimony, however, was positively contradicted by Liptak, appellant's co-defendant, while under cross-examination by counsel for plaintiffs. The portion of his testimony to which we refer reads: "Q. You heard Mr. Whalen say on the witness stand that you yourself

saw on two different occasions drunken people coming in and out from Reby's home? A. Yes. Q. Did you make such a statement to Chief Whalen? A. No, sir. Q. Well, you knew who lived at 617 Water Street, didn't you? A. I said to Mr. Drexler [a fellow policeman] 'It must be Mr. Reby's house.' I didn't notice the number. It was dark, twelve o'clock at night. Q. What was dark? A. When I was going to work. Q. Which night? A. When he came and reported to me. Q. Who made the report? A. Someone made information to me, people on Water Street was making moonshine. Q. Did you ask the name? A. No, I was in a hurry to go to work. Q. Did you make a statement to Chief Whalen that you yourself saw on two different occasions people coming out of Reby's home intoxicated? A. No, sir. ...... The Court: Q. Do I understand you to say that you never made any oral word of mouth information with regard to what was going on at this particular place to Chief Whalen? A. No, sir. Q. The only information you made was to Lieutenant Eckles? A. Yes. Q. You never made any information to Chief Whalen? A. No, sir. Q. You heard Chief Whalen say twice you talked to him? A. No."

It was for the jury to decide whether they believed appellant or Liptak. If they accepted the testimony of the latter, which seems to have been the case, we think they would be justified in finding a lack of probable cause. Appellant frankly admitted that he made no personal investigation of the facts himself. Under the evidence, he either had no conference at all with Liptak, or if he did, he made no effort to ascertain the extent of Liptak's own knowledge of the facts. Liptak made his report not from personal knowledge, but upon unchecked information from an unnamed third party as to an unidentified house.

The making of an information for the purpose of

obtaining a search warrant is not to be lightly regarded. It is a serious matter to enter and search the home of a citizen. The rights of the latter are protected by Article 1, Section 8, of our Constitution, which provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

"Probable cause" is defined in the recent case of Altman v. Standard Refrigerator Co., Inc., 315 Pa. 465, 480, 173 A. 411, as follows: "Probable cause is generally defined to be a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in the same situation in believing the party is guilty of the offense."

The facts developed at the trial, with respect to the unsubstantial and indefinite character of the reports upon which the information for the warrant was based, could have been readily ascertained by appellant from his subordinates before he obtained, and authorized the service of, the warrant. Clearly, neither a trial court nor this court would be warranted in declaring, as a matter of law, that one who had, or by the exercise of reasonable care might have obtained, knowledge of the vague and indefinite nature of his subordinates' information, was acting as "an ordinarily prudent man" would act under like circumstances when he appeared before the alderman and swore out the search warrant. That phase of the case was necessarily for the jury. Nor was appellant relieved from his duty to exercise reasonable caution because he received the information from another. In Herr v. Lollar, 268 Pa. 109, 113, 110 A. 742, the following pertinent observation was made: "The fact that defendant proceeded on

the instruction of the assistant district attorney whose action was based, not upon information furnished by defendant, but by another, does not relieve defendant entirely, as a matter of law, from establishing his own good faith in the transaction. If defendant was without personal knowledge of the facts it was his duty, before making oath to the information, to take reasonable precaution to ascertain the truth of the facts upon which it was based and to which he subscribed. Though a constable, he could not, in an action of this character, relieve himself from all liability, as a matter of law, by showing a request by the assistant district attorney that he make oath to facts not within his personal knowledge. Whether he made reasonable investigation of the truth of such facts was a question for the jury."

Where one who swears to a warrant has no personal knowledge of the facts, he may not evade responsibility by accepting and relying upon the unchecked statements of another. Otherwise, the constitutional guaranty could be flouted with impunity. We do not mean, of course, to intimate that the informations for all warrants must be based upon personal knowledge. While it ordinarily seems proper that he who knows the facts should take the oath, there are undoubtedly many cases in which another may properly do so. But when this is done, it is only reasonable to hold that the affiant should satisfy himself, to the extent dictated by ordinary prudence in the existing circumstances, of the knowledge and credibility of his informant. There was evidence from which a jury could reasonably conclude that such precautions were not taken in this case.

In justification of his action, appellant also offered evidence to show that he was directed generally by the mayor to have search warrants issued upon the receipt of information from police officers regarding the illegal sale of liquor. Even if these general instructions were designed to cover the situation now under considera-

tion, they would not operate to relieve appellant from all liability. The responsibility for his oath is his own; he cannot evade that responsibility by placing it upon the shoulders of another—whether a superior or a subordinate. The assignments based upon the denial of appellant's motion for judgment n. o. v. are overruled.

This brings us to a consideration of the motion for a new trial. The only substantial ground assigned is the following excerpt from the charge: "In the present case, the uncontradicted testimony, so far as we recall, is that when the search warrant was executed by the four officers who visited and searched the plaintiffs' house, no incriminating evidence was found there, and no further action, based on the search warrant, was taken by any of the authorities. This fact *is then prima facie evidence of want of probable cause and puts upon the defendants the burden of showing probable cause, unless it might appear from the plaintiffs' testimony that there was probable cause.* Whether the defendants have met this burden is for your determination. If you find there was probable cause, it is a complete defense and the question of malice becomes immaterial. That is to say, if you find there was probable cause for what was done here then you need not go into the question of malice, because it becomes immaterial." (Italics supplied.)

In other words, the jury was told that the admitted fact that no liquor was discovered in the home of the plaintiffs (or any arrest made) amounted to sufficient evidence of want of probable cause to cast upon appellant the burden of proving affirmatively that he had probable cause for instituting the proceedings before the alderman. That is no longer the law in this State.

When this charge was delivered in February, 1934, some confusion existed in the decided cases upon the

question of the effect of a favorable termination of the criminal proceeding.

In June of that year, however, our Supreme Court handed down two decisions—Altman v. Standard Refrigerator Co., Inc., supra, and Groda v. American Stores Co., 315 Pa. 484, 173 A. 419,—in which it was definitely determined that proof of acquittal or discharge in the criminal prosecution does not, prima facie, establish want of probable cause or shift the burden of proof to the defendant in the civil action for damages. In the Groda case, Mr. Justice MAXEY said at page 489: "It has sometimes been held in this State in actions for malicious prosecution that proof that criminal proceedings against the person who was the defendant in the criminal case terminated in his favor either by an acquittal or by the discharge of the examining magistrate, was in itself evidence of the want of probable cause for the prosecution, and from it the existence of malice could be inferred and the burden of proof was then cast upon the civil defendant to prove the contemporaneous existence of probable cause for the prosecution he initiated. Such cases as have or seem to have supported this doctrine can no longer be considered as expressing the law of this State and they are now overruled to the extent that they support the doctrine herein repudiated. Neither an acquittal of the defendant in a criminal prosecution, nor the ignoring of the bill against him by the grand jury, nor his discharge by the examining magistrate, constitutes proof of want of probable cause, or shifts the burden of proof to the defendant in the civil action."

That case arose out of an arrest for larceny, but we think the same principles should apply to the issuance of a search warrant. Otherwise, police officials might be unfairly penalized for legitimate mistakes. The mere fact that the search warrant is unproductive is not conclusive of the real issue, which is whether the

affiant had reasonable grounds upon which to justify his oath.

It, therefore, becomes our duty to sustain the fourth assignment and direct a retrial of the case as against this appellant.

Judgment reversed with a venire.