## Bausewine v. Strassburger et al.

*Victor J. Roberts*, for plaintiff.

*H. Lester Haws*, for defendants.

KNIGHT, P. J., October 15, 1943.——These libel cases were tried together, and resulted in verdicts for plain-

tiff, aggregating $75,000: $50,000 as against the corporate defendant and $25,000 as against the individual defendant.

Plaintiff, George Bausewine, is, and for a number of years has been, the chief of police of the Borough of Norristown. For many years he served in the police department of the City of Philadelphia, from which city he now receives a pension.

Defendant Norristown Herald, Inc., owns and prints a newspaper called Norristown-Times Herald, which, at the time the alleged libels were printed, had a paid circulation of from 12,756 to 14,100 copies. The newspaper is printed in Norristown, and circulated in that borough and surrounding communities.

The individual defendant, Ralph Beaver Strassburger, is the publisher of the Norristown-Times Herald and the owner of practically all the stock of Norristown Herald, Inc.

On June 30, 1942, there appeared an editorial in the Norristown-Times Herald entitled "Gauleiter Bausewine". On the 28th of the next month, there appeared another editorial, in the same paper, entitled "Youth and Age in War", and on the 31st of the same month appeared a news item headlined "Bausewine's Smash-up Recalled. His pal man with criminal record".

Averring that these publications libeled him, plaintiff brought an action in trespass on September 19, 1942, as of no. 36, September term. The same day, September 19th, the Norristown-Times Herald published the last alleged libel, again with some comment thereon. Two days later, the paper published a news article captioned "Lawless Dry Days Recalled". On October 2nd, plaintiff instituted the second action of trespass for libel, averring that he had been libeled by the last two publications.

In support of these motions, defendants have filed six original and sixteen additional reasons. No attempt

was made by counsel for defendants in his brief to segregate the reasons assigned in support of judgments n. o. v. from those assigned for new trials. At the oral argument counsel did not stress any reasons for entering judgments n. o. v. nor can we find any reason why such judgments should be entered.

It will be unnecessary to discuss all the reasons for new trials, for we are of the opinion that these verdicts cannot stand. The jury retired to deliberate on their verdicts at 4:20 p.m. on March 20th of this year. The trial judge waited in his chambers until nearly 7 p.m., and then directed that if verdicts were reached the jury should seal the same and bring them into open court the next morning. Sometime during the evening the jury arrived at verdicts, which were sealed and presented by the foreman in open court the next morning, in the presence of all the jurors.

In the paper handed to the trial judge as the sealed verdicts of the jury were written these words: "The jury arrived at a verdict in the case of Bausewine v. Strassburger in favor of the plaintiff with damages to the amount of $25,000." "The jury arrived at a verdict in the case of Bausewine versus Norristown Herald Corporation in favor of the plaintiff with damages to the amount of $50,000."

Then followed a rather long colloquy between the trial judge and the jury, which it is unnecessary to repeat here, and in which the trial judge sought to ascertain just what the findings of the jury were.

After the colloquy, the trial judge stated: In case no. 36 "the jury find a verdict in favor of the plaintiff, George Bausewine, and against Ralph Beaver Strassburger and the Norristown Herald, Inc., and fix the damages at $12,500 so far as Ralph Beaver Strassburger is concerned and $25,000 so far as the Norristown Herald, Inc., is concerned. And in case no. 83, September term, 1942, George Bausewine v. Ralph Beaver Strassburg and the Norristown Herald, Inc.,

the jury find a verdict in favor of George Bausewine, plaintiff, and against Ralph Beaver Strassburger and the Norristown Herald, Inc., the defendants, and fix the damages as against Ralph Beaver Strassburger at $12,500 and as against the Norristown Herald, Inc., at $25,000".

The jury declared that this was the way they all understood it, whereupon the verdict was taken by the clerk, in the usual way and entered in the records of the court.

The power of the court to put a verdict in proper form, so as to make it express the intention and real finding of the jury, is well settled: Clouser v. Patterson, 122 Pa. 372 (1888); Murtland v. English, 214 Pa. 325 (1906). This power is limited, however, to molding the verdict to make it express the real intention of the jury: MacHolme v. Cochenour, 109 Pa. Superior Ct. 563, 567 (1933).

This the trial judge did, but as so molded the verdicts are improper, for the jury assessed the damages in different amounts against each one of two joint tortfeasors. This they could not do: McCarthy v. De Armit, 99 Pa. 63 (1881); McShea v. McKenna, 95 Pa. Superior Ct. 338 (1929); Reby et ux. v. Whalen et al., 119 Pa. Superior Ct. 476 (1935); MacHolme v. Cochenour, 109 Pa. Superior Ct. 563 (1933).

These verdicts are grossly excessive. Plaintiff did not prove, nor did he claim, special damage. There is little evidence which would support a claim for substantial general damages; the verdicts therefore represent largely punitive damages awarded against both defendants. The amount of the verdicts alone showed that the jury must have been swayed more by passion and prejudice than a desire fairly to compensate plaintiff for the injury done him and reasonably to punish defendants for their wrongdoing. An examination of the record discloses possible reasons for this extravagance on the part of the jury.

In these cases plaintiff charged that defendants were actuated by personal malice and ill will against him, and there was much evidence from which the jury could have found that defendants used the power of their newspaper for the gratification of personal objects. While this conduct deserved censure, and would amply support a verdict for punitive damages, it did not warrant the jury in going the length they did in meting out punishment. The theory of plaintiff was that the alleged libels were inspired by ill will and animosity, which grew out of the following circumstances, as recounted by plaintiff and his witnesses.

In November 1940, plaintiff called at the home of Mr. Strassburger, at the latter's request. While there Mr. Strassburger handed to plaintiff a long letter, describing in minute detail the actions and movements of certain men, who, Mr. Strassburger said, were shadowing him and patrolling his place. He told plaintiff that he knew these men were Federal Bureau of Investigation agents, and he wanted to get their names in order to have them "fired". Plaintiff did not send him the names, although he made an appointment for Mr. Strassburger to meet the Philadelphia district head of the F. B. I., an appointment which Mr. Strassburger did not keep.

According to the witness Wilson, then editor of the Times Herald, Mr. Strassburger was always after the witness to get a report on the "F. B. I. snoopers" from plaintiff; Mr. Strassburger became impatient and angry because plaintiff would not get the names for him, and he threatened to dig up dirty and scandalous stories to blast plaintiff.

It was certainly competent for plaintiff to show that the alleged libels were inspired by actual ill will and personal malice, and in doing this to show the cause of the animosity. All references to the F. B. I. occurred in conversation between plaintiff and his witnesses and Mr. Strassburger, and it was impossible to elimi-

nate references to the F. B. I. from these relevant conversations. There can be little doubt that this evidence given in these war times tended to prejudice and inflame the jury against defendants and helped to account for the excessive verdicts.

A verdict based on passion and prejudice should not be allowed to stand. It cannot be cured by remittitur. Right and justice require that it should be set aside and the case tried again by an impartial jury: Athas v. Fort Pitt Brewing Co., 83 Pitts. L. J. 421 (1934).

"Why should a verdict in part be retained, if the jury were really influenced by prejudice or passion, is a pertinent inquiry": Greer v. Reese et al., 14 Dist. R. 658, 660 (1905).

Our ideas of proper and fair verdicts in these cases are so drastically different from the findings of the jury that to grant new trials unless remittiturs be filed would be in effect substituting verdicts of the judges for verdicts of the jury. Courts can and do exercise the power to correct excessive verdicts by granting a new trial unless a remittitur is filed but, when the verdict thought proper by the court is much less than the amount of the verdict of the jury, to grant a new trial unless a remittitur is filed goes beyond the scaling down of a verdict and substitutes the finding of the court for the finding of the jury. The court has power to modify the finding of the jury, but not to substitute its opinion of what the jury should have done.

In Pennsylvania, evidence of the financial worth of the defendant is admissible in cases in which punitive damages are sought. This evidence is admitted as a guide to the jury in ascertaining what would be a reasonable punishment in damages in any given case. In Pennsylvania, as above pointed out, we do not have the doctrine of comparative negligence, and while a verdict need not be found against all defendants only a single

verdict may be found against those who are held answerable.

When a suit is brought against joint tortfeasors, these two well-established rules raise a very interesting point regarding the admission of evidence of the financial worth of the defendants. A and B are sued as joint tortfeasors, both are equally culpable: A is a man of modest means—B is a man of great wealth. The jury faced with the necessity of bringing in a single verdict against both would either base their finding on the financial worth of A, which would be unfair to the plaintiff, or measure their verdict by the wealth of B, which would be unfair to A, or reach some sort of a compromise, which would be unfair all around.

But one case in Pennsylvania has been called to our attention in which this question has been considered, namely, O'Donnell et ux. v. Kopp et al., 26 D. & C. 672 (1936). In that case Judge Henninger, of Lehigh County, held that it was at least questionable if evidence of the wealth of joint tortfeasors was admissible. There is, however, very respectable authority from other jurisdictions, which holds that evidence of the financial worth of codefendants in tort actions, involving punitive damages, is not admissible: Washington Gas Light Co. v. Lansden, 172 U. S. 534 (1899); Toledo, Wabash & Western Ry. Co. v. Smith, 57 Ill. 517 (1871); Walker et al. v. Kellar, 218 S. W. 792 (1920); McAllister v. Kimberly-Clark Co. et al., 173 N. W. 216 (1919); Schafer v. Ostmann et al., 129 S. W. 63 (1910).

We are of the opinion that the evidence of the financial worth of the two defendants should not have been admitted.

We are also of the opinion that the instructions of the trial judge on the question of damages were inadequate. The jury should have been instructed that the verdict for punitive damages should be measured by

the standard of the least culpable: McCarthy v. De Armit, supra; and that the punitive damages should bear some reasonable relation to the actual damages suffered; Givens v. W. J. Gilmore Drug Co., 337 Pa. 278 (1940) ; Thompson et al. v. Swank, 317 Pa. 158 (1934) ; Rider v. York Haven Water & Power Co., 251 Pa. 18 (1915). The failure to give these instructions to the jury no doubt contributed to the excessive verdicts.

For the above and other reasons, after long deliberation and consultation among the judges, we are of the opinion that right and justice require that these verdicts be set aside and new trials granted.

And now, October 15, 1943, the verdicts are set aside and new trials granted.