**SPRAGUE, LEVINSON & THALL**

v.

**ADVEST, INC.**

**Civ. A. No. 84–2849.**

United States District Court,
E.D. Pennsylvania.

April 9, 1985.

Sheldon L. Albert, Sprague, Levinson & Thrall, Philadelphia, Pa., for plaintiff.

William H. Ewing, Philadelphia, Pa., for defendant.

### MEMORANDUM OF DECISION

McGLYNN, District Judge.

In August of 1983 the plaintiff, a lawyer, received as a fee from a client a properly assigned certificate for 10,625 shares of Patlex stock. On August 19, 1983 the certificate was forwarded to the defendant, a securities broker, with instructions to open an account and to "take whatever action is necessary to transfer the registration of the stock into this firm's name." In spite of these specific instructions the certificate was forwarded by the defendant to the transfer agent with instructions to transfer the stock to Cede & Co., a "street name." The name of Sprague & Rubenstone which had been inserted into the assignment on the reverse side of the certificate was crossed out and the name "Cede & Co." was substituted. Thereafter the certificate was sent to Depository Trust Company, New York City for "safekeeping."

On Thursday, December 8, 1983 a lawyer in the Sprague firm called Advest and requested the stock certificate because it was going to be pledged to the Commerce Bank of New Jersey as collateral for a $25,000 loan to one of Sprague's clients which was to be closed on the following Monday, December 12, 1983.

Because they could not produce the certificate on such short notice Advest agreed to provide a certified check in the amount of $25,000 to be used as collateral until the stock certificate became available. This arrangement was satisfactory to all concerned and the check was delivered in time for the closing of the loan on December 12.

The stock certificate properly made out in the name of Sprague and Rubenstone was delivered on December 19, 1983. At that point, instead of immediately substituting the certificate of stock, the Sprague firm and the Commerce Bank entered into protracted negotiations over the language of the hypothecation agreement which was not resolved until around February 13, 1984. On that date the stock was substituted as collateral and the certified check was retrieved and returned to Advest.

Because he believed he was injured by the defendant's conduct, Sprague filed this action claiming damages based on five distinct theories, three of which were submitted to the jury as follows:

1. Unlawful conversion by Advest of the shares of stock by causing the shares to be registered in a name other than Sprague & Rubenstone.

2. Breach of contract by failing to carry out the contract to have the stock transferred to the name of Sprague and Rubenstone, and

3. Breach of a fiduciary duty which arose as a result of the relationship of stock broker and client.

In essence, the damages claimed were the loss of the client's goodwill as a source of business and the loss of lawyers' billable time which could have been devoted to oth-

er matters instead of working on the loan problems. With respect to the client's goodwill, the client testified that he had had some business subsequent to that time which he referred to other lawyers but it had always been his practice to spread legal work around. He also testified that the failure to produce the stock certificate did not affect the closing of the loan since the certified check was an adequate substitute. His testimony did suggest, however, that he was annoyed by the temporary mix-up with respect to the collateral, but he viewed it simply as further evidence of his preconceived notion that other lawyers in the Sprague firm were actively resisting the firm's involvement in the loan transaction.

With regard to the loss of the lawyers' time, except for the period between December 8 and December 12, all time spent by the lawyers would have been expended even if the certificate had been delivered when demanded. The time between December 8 and 12 was *de minimus* consisting of several telephone conversations with Commerce Bank and Advest personnel making arrangements for substituting the collateral.

The jury in response to special interrogatories found that Advest had improperly converted the stock and breached the contract as well as its fiduciary duty but concluded also that the Sprague firm suffered no compensatory damages, and refused to award even nominal damages. Nevertheless, the jury awarded punitive damages in the amount of $15,000. (See Appendix.)

Citing *Hilbert v. Roth*, 395 Pa. 270, 276, 149 A.2d 648 (1959), Advest contends that in the absence of actual or compensatory damages an award of punitive damages cannot be sustained. In *Hilbert* the Pennsylvania Supreme Court held that the satisfaction of a judgment for compensatory damages against one tortfeasor precludes an action against a joint tortfeasor for punitive damages. The court's analysis is as follows:

▇▇▇ Finally, plaintiff contends that he is entitled to proceed against Roth for his punitive damages even though precluded on his claim for compensatory damages. *It is well recognized that no award for punitive damages may be made where actual damage has not been suffered. Hygenic Fleeced Underwear Co. v. Way*, 35 Pa.Super. 229, 235; *Benson v. Pennsylvania R. Co.*, 1917, 66 Pittsb.Leg.J. 350; Restatement, Torts, Sec. 908, Comment (c). In this case actual damage has been suffered but none for which plaintiff can now bring action against Roth. The right to punitive damages is a mere incident to a cause of action—an element which the jury may consider in making its determination— and not the subject of an action in itself. *Hygenic Fleeced Underwear Co. v. Way*, supra; 25 C.J.S. Damages § 118, pp. 713–714 and cases cited therein. See *MacHolme v. Cochenour*, 1933, 109 Pa.Super. 563, 167 A. 647; *Stricklen v. Pearson Construction Co.*, 1918, 185 Iowa 95, 169 N.W. 628. Hence, since plaintiff no longer has a cause of action of which his claim for punitive damages may be an element, that claim must fail.

395 Pa. at 276, 149 A.2d 648. (emphasis added).

The Third Circuit, applying Pennsylvania law, and citing *Hilbert* as its authority held that an owner who recovered the value of the chattel from the original converter could not claim either compensatory or punitive damages from subsequent converters. *Baram v. Farugia*, 606 F.2d 42, 46 (3d Cir.1979). Similarly, in an action against a finance company for inducing a refusal to deal where no pecuniary loss was shown, the court held that plaintiff cannot recover punitive damages even though the defendant acted in an obnoxious manner. *Bruce Lincoln-Mercury v. Universal C.I.T. Credit Corp*, 325 F.2d 2, 22 (3d Cir.1963). *See, generally, Basista v. Weir*, 340 F.2d 74, 86 n. 11 (3d Cir.1965). Other cases which have held that a finding of compensatory damages is a prerequisite to an award of punitive damages include *Thomas v. American Cystoscope Makers, Inc.*, 414 F.Supp. 255, 264 (E.D.Pa.1976);

*Certified Laboratories of Texas, Inc. v. Rubinson*, 303 F.Supp. 1014, 1029 (E.D.Pa. 1969); *Weider v. Hoffman*, 238 F.Supp. 437, 444–45 (M.D.Pa.1965).

 Despite its lineage, however, two recent panel decisions by the Superior Court of Pennsylvania have cast doubt on the traditional interpretation of *Hilbert* by the Third Circuit. In *Laniecki v. Polish Army Veterans Assn.*, 331 Pa.Superior 413, 480 A.2d 1101 (1984) and in *Rhoads v. Heberling*, 306 Pa.Superior 35, 451 A.2d 1378 (1982) the court, relying on comment c to § 908 of the RESTATEMENT OF TORTS, let stand an award of punitive damages despite the absence of an award for actual damages. The court's analysis in these two cases is compelling but there are several factors which dissuade me from adopting it. In both cases the court found that harm, in fact, had occurred (mental distress, humiliation in *Laniecki*, mental anguish in *Rhoads* ). Here the jury found that the plaintiff suffered no harm. Secondly, the damages in *Laniecki* and *Rhoads* stemmed from unliquidated personal injuries whereas in the instant case the damages claimed were economic losses. Finally, and most important, I am bound by the Third Circuit's interpretation of the law of Pennsylvania and its predictions as to how the Pennsylvania Supreme Court would rule with respect to a given case. As recently as December 13, 1984, the Third Circuit cited *Hilbert* for the proposition that plaintiffs "were not entitled to submit the issue of punitive damages to the jury [in a bifurcated trial] until they first established [defendant's] liability for compensatory damages." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984).

 Decisions of an intermediate appellate court are entitled to considerable weight but in the absence of a clear pronouncement by the Supreme Court of Pennsylvania, I believe I must follow *Baram v. Farugia, supra,* and *Bruce Lincoln-Mercury v. Universal C.I.T. Credit Corp., supra.* Accordingly, the award of punitive damages will be set aside. Since the jury found there was no pecuniary loss, the verdict will be molded as a finding for the defendant.

Judgment will be entered in favor of the defendant.

## APPENDIX

### INTERROGATORIES

1. Do you find that the defendant converted the plaintiff's Patlex stock and seriously interfered with the plaintiff's dominion, custody and control over it?
 YES _X_ NO___

2. Do you find that the defendant breached a contract with the plaintiff?
 YES _X_ NO___

3. Do you find that the defendant violated its fiduciary duty to the plaintiff?
 YES _X_ NO___
 If your answer to any or all of Questions 1, 2, or 3, was "Yes," go on to Question 4. If your answer to all three was "No," go no further.

4. Do you find that any of the defendant's acts described above caused harm to the plaintiff?
 YES___ NO _X_

5. If your answer to Question 4 is "Yes," what amount do you award the plaintiff as compensation?
 $ _N/A_

6. If your answer to Question 4 is "No," do you award the plaintiff nominal damages of $1.00?
 YES___ NO _X_

7. If your answer to Question 1 or 3 is "Yes," do you award punitive damages to the plaintiff?
 YES _X_ NO___

8. If your answer to Question 7 is "Yes,", what amount do you award the plaintiff as punitive damages?
 Fifteen Thousand Dollars
 $15,000.00