King *v.* Lejko et al., Appellants.

Argued April 27, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*Joseph F. Mayhugh,* for appellants.

*Clyde A. Armstrong,* and with him *Charles M. Thorp, Jr.,* of *Thorp, Bostwick, Stewart and Reed,* for appellee, cited: Fendall v. Eckert, 90 Pa. Superior Ct. 305; Schwatka v. Davidson, 70 Pa. Superior Ct. 362.

OPINION BY KELLER, J., July 8, 1931:

We think the plaintiff's statement sufficiently set forth that the prosecution for larceny, which formed the basis for this action, was begun and carried on maliciously and without probable cause. It averred that the complaint was made pursuant to a conspiracy on the part of the defendants "maliciously to prosecute the plaintiff without foundation in fact for said charge;" that the charge was false; the plaintiff's arrest and imprisonment and his discharge by the magistrate; and "that said arrest was unwarranted and wholly without basis in fact." In Farmer v. Darling, 4 Burr. 1971, 1972, 1974, the words "causeless and without any foundation" and "groundless" were used as the practical equivalent of the expression "without probable cause;" and in Skinner v. Gunton, 1 Saunders 228, 229, the declaration averred that the arrest was "without cause." See also Jones v. Givin, Gilbert's Cases L. & E. 185; 2 Chitty on Pleading 607, note (x). No affidavit of defense raising a question of law in the nature of a demurrer was filed, nor motion made to strike off the statement as insufficient. Evidence tending to show want of probable cause was

admitted without specific objection, and the subject was covered in the judge's charge. Any informality in the statement was cured by the verdict: Weinberger v. Shelly, 6 W. & S. 336; Quick v. Miller, 103 Pa. 67.

John Pendro made the complaint on which the plaintiff was arrested. He was called as under cross-examination by the plaintiff and related the circumstances which preceded his entering the complaint. They did not show a vestige of probable cause for the plaintiff's arrest. He said the justice of the peace told him, "If you got any suspicion of the person, that is all that is necessary," and he thereupon signed the information, although he failed to state any reasonable grounds for such suspicion. Of course, the statement of the justice of the peace above quoted did not excuse him nor furnish probable cause for the plaintiff's arrest: Brobst v. Ruff, 100 Pa. 91; Beihofer v. Loeffert, 159 Pa. 365; Werner v. Bowers, 94 Pa. Superior Ct. 110. The slightest inquiry on Pendro's part would have shown the groundlessness of his suspicion as first related.

It is true that after his wife had testified for the defense he supported her evidence by further testimony which presented stronger grounds for suspecting the plaintiff's guilt, but the jury were not bound to accept this evidence as true. Whether his wife had so informed him, or the later story was invented to relieve defendants of responsibility in this action, was, especially in view of his prior testimony, a question of fact for the jury. The instructions of the trial judge on the point were more favorable to the defendants than they had a right to ask.

There was direct evidence in the case, which if believed, went to establish that John Lejko, Pendro's father-in-law, had encouraged and taken an active part in securing the plaintiff's arrest, sufficiently so to

make him jointly answerable for the unfounded prosecution: McAleer v. Good, 216 Pa. 473; Davis v. Wilhelm & Bonnett, 76 Pa. Superior Ct. 396, 402. There was no such direct evidence showing that his wife, Mary Lejko, had any part in encouraging or bringing about the plaintiff's arrest. The proof as to her part in the matter is rather slight, but we are not convinced that it was so entirely wanting as to require a directed verdict in her favor. If the jury believed the evidence of plaintiff's witness that Mrs. Lejko had first reported that *her* pocketbook containing $200 of her own money had been taken by some unknown person, while her daughter Mrs. Pendro had gone downstairs to see her father in his store on the first floor, and she afterwards, and on the trial, denied having made any such statement but supported her daughter in saying that the pocketbook and its contents, then alleged to be $465, belonged to her daughter, Mrs. Pendro, and that King, the plaintiff, came up the stairs to his rooms on the third floor right after she missed the money and while she was complaining of its loss, thus contradicting the plaintiff and his landlady, who testified that he had left the building nearly two hours before and did not return until an hour and a half after the loss was reported, they might infer, if they disbelieved her testimony on the trial, that her evidence was given in furtherance of the conspiracy to accuse an innocent man and bring about his unfounded arrest, and that she was concerned in it, and hold her jointly responsible with the other defendants for such action. The jury had the witnesses before them and were best qualified to pass on disputed matters of fact.

The assignments of error are overruled and the judgment is affirmed.