Robert E. LYNN, Alicia J. Lynn, Plaintiffs-Appellants,

v.

William F. SMITH, John E. Young, Charles Benedict, Henry J. Danielson, J. Regis Thompson, Charles Anthony.

No. 13118.

United States Court of Appeals Third Circuit.

Argued April 20, 1960.

Decided Aug. 2, 1960.

C. Henry Nicholson, Warren, Pa. (William R. Blood, Jamestown, N. Y., on the brief), for appellants.

John C. Gent, Erie, Pa. (Curtze & Gent, Erie, Pa., on the brief), for appellees.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

At the conclusion of pre-trial conferences, in an action for malicious prosecution, the court below, sua sponte, entered an Order of dismissal and directed judgment against the plaintiff and in favor of the defendants "with prejudice and costs." [1]

In a "Memorandum on Order of Dismissal" the court below found "not only that there was a lack of malice but that there was probable cause." D.C.W.D.Pa. 1959, 178 F.Supp. 866, 869.

On this appeal plaintiff contends that the trial judge erred in resolving factual issues which required resolution by a jury.[2]

Jurisdiction is based on diversity of citizenship and the requisite jurisdictional amount.[3]

The premise of plaintiff's action is that he was, at the instance of four of the defendants,[4] "maliciously and without probable cause, and with intent to injure" subjected to criminal prosecution on the charge that he had removed a concrete bench from a public park in the village of Pittsfield, Warren County, Pennsylvania; taken into custody by a fifth defendant, a Constable;[5] found to be guilty and sentenced, in a summary proceeding, to pay a fine of $50.00 and to serve 60 days in jail by a sixth defend-

ant, a Justice of the Peace;[6] and on appeal to the Quarter Sessions Court of Warren County, Pennsylvania, found not guilty and discharged with costs imposed on the county.

The pre-trial proceedings in the court below developed that plaintiff had inherited from his father a dwelling at the corner of Constitution Avenue and Prospect Street, in the Village of Pittsfield, Pittsfield Township: earlier, in May 1949, plaintiff's father had granted permission to the local citizenry to place, at the extreme northwest corner of his property, a boulder to which was attached a bronze plaque bearing the names of Pittsfield's war dead: in the early part of 1955 a controversy developed between plaintiff and the defendant township supervisors and defendant Danielson as to whether the area where the war memorial stood was owned by plaintiff or was public land. The controversy grew in intensity during the succeeding year. On May 8, 1956, plaintiff by letter to the township supervisors, offered to give them a quitclaim deed to a small area surrounding the monument provided "the said property shall be used as a War Memorial and shall be maintained by the Pittsfield Township" and he was reimbursed for "the cost of the legal expense incurred * * * in defending the title to this property." [7] The letter also stated that if plaintiff's "proposal is not accepted, you are hereby notified to remove from my property within thirty days from the date hereof the monument, flagpole

1. Robert E. Lynn and Alicia J. Lynn, his wife, appear as "plaintiffs appellants". The record discloses that in the first count of the complaint Robert alone was denominated as plaintiff and his cause of action was based on his alleged malicious prosecution by the defendants. In the second count Robert and Alicia were both denominated as plaintiffs and their cause of action was based on alleged damages not pertinent here since in the court below and here Robert pressed only the first count in his complaint. For that reason reference is made only to the plaintiff Robert.

2. A jury trial had been demanded.

3. Plaintiff is a resident and citizen of New York, the defendants are residents and citizens of Pennsylvania.

4. Plaintiff's complaint charged the defendants William F. Smith, John E. Young, Charles Benedict and Henry J. Danielson with instituting his criminal prosecution. Smith, Young and Benedict are Supervisors of Pittsfield Township, Warren County, Pennsylvania; Danielson is a "leading citizen" of Pittsfield.

5. The defendant Charles Anthony is the Constable.

6. The defendant J. Regis Thompson is the Justice of the Peace.

7. Plaintiff's Exhibit No. 10.

and shrubbery which is now located thereon."

Shortly thereafter, the supervisors placed a concrete bench at a point described by the court below in its "Memorandum on Order of Dismissal" "either on the same plot of ground on which the memorial was situate or within a few feet of that ground." Plaintiff, a day or two later, removed the bench and was arrested for doing so.

At the pre-trial conferences plaintiff contended, and said he was prepared to prove at the trial, that the bench was not placed in the vicinity of the memorial boulder but at a point more than fifty feet from it and upon his front lawn. Plaintiff further contended that he was prepared to prove at the trial that the township did not have title to the ground on which the war memorial itself stood, and that the defendants at the time of his arrest, and thereafter, knew that the concrete bench had been placed on his property.

Defendants, at the pre-trial conferences, made the twofold contention that the ground on which the war memorial stood was a "public park" and that the concrete bench had been placed in this "public park" and not 50 feet away as plaintiff urged. They also declared that they had consulted Myron Kornreich, District Attorney of Warren County following removal of the bench and that he had prepared the information charging plaintiff with violation of a Pennsylvania statute making it a criminal offense to remove an ornamental erection in a public park.

On the score of defendants' contention, plaintiff urged that they had not made full disclosure to the District Attorney of all the facts relating to the ownership of the land on which the concrete bench had been placed; specifically, that the defendants knew that the bench was placed on plaintiff's property and had not disclosed that fact to the District Attorney.

The Court below, in what must be characterized as a somewhat unusual step in a pre-trial conference, requested that the District Attorney make an unsworn "statement" as to his participation in the proceedings which led to plaintiff's arrest. The District Attorney said that the defendants, other than the Justice of the Peace, told him "about this man [plaintiff] breaking some kind of ornament in their little park down there, and we went over the thing and as I recall I told them I would look into the law and see what type of charge fitted these particular facts and I would draw a complaint if one was advisable. In the meantime I believe, from the information they gave me I went to the courthouse and checked the records with reference to this deed through which he claimed ownership to the land, so forth, and I checked the state statute on it, and I came up with this one statute which to me seemed to fit these facts, and I drew up a complaint and I believe one of them called for it and went down and swore to it before the justice of the peace. Then * * * I appeared at the hearing and he was represented by counsel, and we went into a full hearing."

In response to the question as to "How far in the title did you go?" the District Attorney said:

"Well, I always took the position, and I so advised these supervisors, that this case would not settle the title to the land, this to me was strictly a criminal case, there was evidence of a park being there, or a village green, because there was a monument on it and we felt we had evidence to connect this particular defendant [plaintiff] with destroying an ornament in the village park, and I was mostly concerned with what evidence we would have to identify him as the culprit, that he did it, and so forth, because I felt we had a good prima facie case on these facts. *To me it didn't make much difference who actually owned the land * * * and I felt that this bench if it was on that corner piece* and was considered a park for a period of four or five or six years and he knew it

was there, that he should not have destroyed this thing, which we later proved and which he later admitted." (Emphasis supplied.)

In reply to a statement made by plaintiff's counsel that "The only fallacy, the bench was not on that corner piece; the bench was a considerable piece down from the rock" the District Attorney said:

"That was a question of fact which turned out later in the testimony. I think the county judge [the Quarter Sessions Court of Warren County] in his opinion felt that it was not proved beyond a reasonable doubt that this bench was exactly on the park line or back of the park or what. I mean it was one of those things, but so far as the prosecution was concerned we felt we had good probable cause to charge him."

Following a brief colloquy between the court below and counsel for the parties the Court stated:

"I don't want to spend three or four days trying this case when it seems to me clearly based upon the pre-trial * * * that there just isn't a claim for relief made out."

In its "Memorandum on Order of Dismissal" entered several days later, the District Court said (at page 868):

" * * * the Supervisors caused the concrete bench to be placed either on the same plot of ground on which the memorial was situate *or within a few feet of that ground.* Plaintiff admittedly broke up the bench and threw it away. * * *

"* * * *The land having been considered by everyone as a public park,* the District Attorney considered that Lynn should be prosecuted for the destruction of the bench, a piece of personal property admittedly owned by the township. * * * "

and at page 869:

"Upon all the evidence, however, which both sides would produce in this case as shown by the pre-trial record, *this Court would be compel-*

*led to rule not only that there was a lack of malice but that there was probable cause.* * * *

"The District Attorney's evidence alone would justify the prosecution, providing the defendants had made full disclosure to him. *The only point in that regard that plaintiff's counsel disputes is that the District Attorney was not informed of the weakness in the public title * * *.* Under all the circumstances revealed at pre-trial, the *District Attorney's advice and participation in the prosecution conclusively establishes probable cause and want of malice.* See Baird v. Aluminum Seal Company, 3 Cir., 250 F.2d 595; Psinakis v. Psinakis, 3 Cir., 221 F.2d 418; Publix Drug Co. v. Breyer Ice Cream Co., 347 Pa. 346, 32 A.2d 413." (Emphasis supplied.)

It is evident from the foregoing that the District Court premised its entry of judgment for the defendants on its view that "the District Attorney's advice and participation in the prosecution conclusively establishes probable cause and want of malice."

In that respect the District Court was in error under applicable Pennsylvania law which governs in this diversity action.

█ It is true, as we said in Psinakis v. Psinakis, 3 Cir., 1955, 221 F.2d 418, 424, that " * * * under the Pennsylvania rule the fact that the action was taken on the advice of counsel *is at least strong evidence* that there was probable cause and a lack of malice on the part of the defendant" but it is well-settled in Pennsylvania, as held in Bell v. Atlantic City Railroad Co., 1902, 202 Pa. 178, 181, 51 A. 600, citing earlier Pennsylvania cases, that "A resort to professional advice *does not necessarily establish a conclusive presumption* against malice and *in favor of probable cause,* and hence does not constitute an independent and substantive defense to an action for malicious prosecution. * * * Whether or not the defense is established

is a question of fact to be found by the jury from all the facts and circumstances taken in connection with such advice. Thus *it is for the jury to determine whether the party has fairly and fully communicated to his counsel the facts within his knowledge, and used reasonable diligence to ascertain the truth, as also whether he acted in good faith upon the advice received from counsel.*" (Emphasis supplied.)

That the "defense" of full disclosure to counsel and "good faith" in acting upon counsel's advice, when disputed, are factual issues to be determined by the jury was further spelled out in Groda v. American Stores Company, 1934, 315 Pa. 484, 173 A. 419, 94 A.L.R. 738. It was there said in 315 Pa. at page 494, 173 A. at page 423, citing Smith v. Walter, 1889, 125 Pa. 453, 469, 17 A. 466:

" 'Whether the advice makes out a good defense or not depends on the good faith with which it is sought and followed. Such good faith is shown by the candor, fullness, and fairness of the client's statement, upon which the advice was based, and *its adequacy in those respects, whenever it is disputed, is for the jury to determine upon all the evidence.*' " (Emphasis supplied.)

The Pennsylvania rule is in accord with 3 Restatement, Torts, 1938 ed. § 666, comment g. which reads in part as follows:

" * * * Furthermore, it is for the jury to determine whether the client sought the advice of his attorney in good faith or whether the advice was sought to protect him from liability for initiating proceedings upon which he had already determined. It is also for the jury to find whether the accused laid before the attorney all the facts which he knew or of which he had reliable information; or, on the other hand, whether he suppressed facts which he should have known to be material."

On the score of good faith, where it is at issue, it is for the jury, under the Pennsylvania rule, to determine whether the defendants acted out of "private spite and enmity", Curley v. Automobile Finance Company, 1941, 343 Pa. 280, 287, 23 A.2d 48, 139 A.L.R. 1082, and whether they had, or didn't have, "an honest and reasonable belief in the existence of a probable cause for the initiation of the prosecution of plaintiffs." Biggans v. Hajoca Corp., 3 Cir., 1950, 185 F.2d 982, 984. The Pennsylvania rule in this respect is in accord with 3 Restatement, Torts, 1938 ed., § 666, comment g.

The Pennsylvania courts have held frequently that it is only where the facts are "admitted or clearly established" and "there is no conflict in the testimony" that the issue of the existence or nonexistence of probable cause is a question of law for the court. Hugee v. Pennsylvania Railroad Co., 1954, 376 Pa. 286, 289, 101 A.2d 740; Miller v. Pennsylvania R. R. Co., 1952, 371 Pa. 308, 309, 89 A.2d 809; Altman v. Standard Refrig. Co., Inc., 1934, 315 Pa. 465, 481, 173 A. 411.

Applying the principles stated to the instant case we are of the opinion that the District Court erred in dismissing plaintiff's complaint and directing entry of judgment in favor of the defendants.

The record discloses that plaintiff had placed in issue these questions: (1) the good faith of the defendant Supervisors and Danielson; (2) their "spite" in initiating his criminal prosecution; (3) whether they had "used reasonable diligence to ascertain the truth" as to the ownership of the ground on which the concrete bench had been placed; and (4) as to whether they had "fairly and fully communicated" to the District Attorney "the facts within their knowledge". On the latter score plaintiff contended all the defendants had knowledge that the bench was placed on plaintiff's property and not in a "public park".

These questions all presented factual issues which required jury determination

and thus called into play the Pennsylvania rule that the existence or non-existence of probable cause is for the jury when there is conflict in the testimony on the score of probable cause.

That an issue of fact existed as to the location of the place where the concrete bench was placed—whether it was in a "public park" or on property owned by the plaintiff—is plainly evident from the determination of the Quarter Sessions Court of Warren County, in finding the plaintiff not guilty of removing the bench from a "public park", on the ground that the prosecution had failed to establish beyond a reasonable doubt ownership of the land on which the bench was placed. It may be noted parenthetically that the opinion of the Warren County court had been brought to the attention of the District Court in the course of the pre-trial conferences.

■ Inherent in the District Court's dismissal of plaintiff's suit and its entry of judgment in favor of the defendants is the District Court's determination of the factual issues enumerated, particularly those relating to the "good faith" of the defendants, and the quantum of their "disclosure" of the facts to the District Attorney. In making factual findings the District Court usurped the jury function and when it did so it committed reversible error.

The District Court also erred as a matter of law in holding that under the circumstances "the District Attorney's advice and participation in the prosecution conclusively establishes probable cause and want of malice."

■ It may be said at this point that two of the defendants—the Justice of the Peace and the Constable—here urge that the District Court's entry of judgment in their favor must be affirmed because notice had not been given them, in accordance with the provisions of a Pennsylvania statute, of the plaintiff's intention to join them in his action. This question was not presented to the District Court and it will be a matter for its consideration when the cause comes again before it. Cf. Cities Service Oil Co. v. Dunlap, 1939, 308 U.S. 208, 212, 213, 60 S.Ct. 201, 84 L.Ed. 196.

These further comments must be made.

We noted earlier that the District Court, sua sponte, dismissed plaintiff's action and directed entry of judgment for the defendants. What the District Court did, in effect, was to grant a summary judgment although neither party had moved for a summary judgment nor had they taken any steps in that direction in accordance with the specific requirements of Rules 12(b) and 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.

■ The appellate tribunals in the federal judicial system have frequently pointed out to trial courts that the resolution of factual issues is always for the jury where causes are not tried to the court and that summary judgments cannot be granted when there is a genuine issue as to a material fact presented by either of the parties to an action. Bragen v. Hudson News Company, Inc., 3 Cir., 1960, 278 F.2d 615; Krieger v. Ownership Corporation, 3 Cir., 1959, 270 F.2d 265; Alaniz v. United States, 10 Cir., 1958, 257 F.2d 108; Cameron v. Vancouver Plywood Corporation, 9 Cir., 1959, 266 F.2d 535.

■ Further, we are compelled to observe that pre-trial conferences are not intended, nor have they ever been, to serve as a substitute for the regular trial of cases. Nor, may we add, were pre-trial conferences intended to transfer to the presiding judge the traditional jury function of resolving factual issues.

Finally, mention must be made of the fact that in the course of the pre-trial conferences the oral statement of an unsworn "witness" was received—the District Attorney—and, as it turned out, this "statement" was regarded by the District Court as the critical "testimony" in the case. The record, incidentally, discloses that the District Court itself directed the receipt of the District Attorney's statement.

On this score we add that we have found only one reported case in which oral testimony was taken at a pre-trial conference—Dinsel v. Pennsylvania Railroad Company, D.C.W.D.Pa.1956, 144 F. Supp. 880. There the District Court ordered a witness to appear for interrogation in order to ascertain if his "testimony" would raise an issue requiring expert testimony at the trial.

In our view the receipt of "oral statements" by "witnesses" in a pre-trial conference opens a Pandora's box not in contemplation by those who so wisely conceived pre-trial procedures as a medium of expediting the trial of cases and not as a substitute for the regular trial process.

For the reasons stated the Order of the District Court dismissing the Complaint and directing entry of judgment against the plaintiffs and in favor of the defendants, will be reversed and the cause remanded with directions to proceed in accordance with this Opinion.