Robert E. LYNN and Alicia J. Lynn,
Plaintiffs,

v.

William F. SMITH, John E. Young, Charles Benedict, Henry J. Danielson, J. Regis Thompson and Charles Anthony, Defendants.

Civ. A. No. 660.

United States District Court
W. D. Pennsylvania.

May 2, 1961.

888

William R. Blood, Jamestown, N. Y., and C. Henry Nicholson, Warren, Pa., for plaintiff.

John G. Gent, Erie, Pa., for defendants.

WILLSON, District Judge.

This civil action was once dismissed by this court on the record as it existed at the end of the pre-trial conference. My reasons for the dismissal are found in 178 F.Supp. 866. The dismissal was reversed by the Court of Appeals. Its opinion is found in 281 F.2d 501. Thereafter the case came on for trial before a jury. During the trial of the case the cause of action of Alicia J. Lynn, one of the plaintiffs, was dismissed because the pleadings and the proofs disclosed to a legal certainty that this plaintiff never was entitled to recover the minimum required jurisdictional amount. It should be mentioned here also that defendant, William F. Smith, had died prior to trial and as there was no substitution of his personal representative, the action was dismissed as to him by agreement of counsel.

On November 16, 1960, the jury returned a verdict in favor of the plaintiff, Robert E. Lynn, and against but three of the five defendants remaining in the case. Pursuant to the verdict, judgment was entered in favor of Robert E. Lynn, the plaintiff, and against defendants, John E. Young, Charles Benedict and Henry J. Danielson, in the sum of $2,100. Pursuant to the provisions of 28 U.S. C.A. § 1332, effective July 25, 1958, this civil action having been commenced March 2, 1959, the plaintiff having been adjudged to be entitled to recover less than the sum or value of $10,000, and there being no setoff or counterclaim involved, plaintiff was denied costs and in addition, all the record costs were imposed against the plaintiff.

The case is now before me on post trial motions filed by both plaintiff and defendants.

Plaintiff's Motion for New Trial

Plaintiff filed a timely motion for a new trial assigning five reasons as follows:

"The verdict was inadequate.

"The learned trial judge erred on the law.

"The learned trial judge erred in rulings on the evidence.

"The learned trial judge erred in his charge to the jury.

"The charge of the learned trial judge to the jury was prejudicial to the plaintiffs."

■ It is not believed that the motion filed is in accordance with Rule 7 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Rule 7(b) states that " * * * a motion shall state with particularity the grounds therefor. * * * " Moore Federal Practice, Vol. 6, at page 3844 indicates that a motion " * * * must state with particularity the grounds therefor. * * * "; and it is noticed that Rule 50 relating to motions for directed verdicts requires that specific grounds be stated. The instant motion as filed is insufficient to raise any issues. Particularly is this so in the instant case because plaintiff has not had the trial record transcribed nor even favored the court with a brief. From the generality of the reasons for a new trial as submitted by plaintiff's counsel, it is not believed that this court is required to search its memory and the record in an endeavor to acquaint itself with the alleged errors in the trial of the case. In any event, because of the rulings made

upon defendants' motions which will be hereinafter discussed, plaintiff's motion for a new trial will not be granted.

### Defendants' Motion for Judgment N. O. V.

At the close of the evidence, the defendants moved for a directed verdict raising the issue that all the evidence was insufficient in law to form a basis for a verdict for the plaintiff, and for the further reason that the case never did actually involve the jurisdictional amount required in diversity cases. After careful consideration of the evidence and the law, this court has come to the conclusion that the defendants are right in both instances.

Because of the published opinions, it seems unnecessary to again detail the facts introduced in evidence at the trial of this case. The issues at trial were the same as indicated in the complaint and in the plaintiff's pre-trial narrative statements, both the original and the amendment thereto. Plaintiff's contention was that the three supervisors of Pittsfield Township, Warren County, Pa., that is defendants Smith, Young and Benedict, and also defendant Danielson, a private citizen, maliciously and without probable cause, intending to injure the plaintiff, Robert E. Lynn, did, on or about June 13, 1956, cause an information to be made and sworn to by the said Benedict, charging that plaintiff, Robert E. Lynn, did wilfully and maliciously " * * * take and carry away a certain ornamental concrete erection in a public park in said Pittsfield Township, * * * ". Plaintiff contended also that in furtherance of the conspiracy Thompson held plaintiff to excessive bail for a further hearing upon his arrest by Constable Anthony.

The case before Justice of the Peace Thompson in which plaintiff was convicted was a full trial upon the merits in a summary proceeding as permitted under Pennsylvania statutes. The District Attorney Kornreich of Warren County represented the Commonwealth. Plaintiff was represented by Mr. Nicholson, his present counsel. Witnesses were heard on both sides. Justice of the Peace Thompson testified at the instant trial that he convicted plaintiff upon the evidence presented and that alone. It is to be noticed at this point that the jury in the instant case exonerated defendants Thompson and Anthony, being the Justice of the Peace and the Constable, from any liability to plaintiff as a result of the prosecution.

Within the time permitted under the statute, the Court of Quarter Sessions of Warren County, Pa., allowed an appeal from the conviction had before Justice of the Peace Thompson. Subsequently, after a two day non-jury trial held August 5th and 6th, 1957, Judge Flick of the Court of Quarter Sessions of Warren County found defendant not guilty. His final order of March 5, 1958, inter alia, recites:

> " * * * Defendant has not been proven guilty of the crime with which he is charged, beyond a reasonable doubt, * * * ".

Judge Flick's opinion is a part of the evidence in this case. It is noticed in that opinion that Judge Flick discussed the mode of procedure and punishment in relation to the charge which the District Attorney prepared against the plaintiff. He held that the law " * * * gave jurisdiction to Justices of the Peace *as with a summary offense*, (emphasis supplied), and as provided for an appeal such as is now before the court. * * * ". It is important at this point to bear in mind, because it was undisputed before the Warren County Court, that the defendant Thompson had jurisdiction as a trial court of the offense charged against plaintiff nor was testimony to this effect disputed in the instant trial. He found him guilty upon the evidence. Defendant has a full trial. The jury in this case has not only exonerated Thompson but the only charge in plaintiff's complaint against Thompson is that he was part of the conspiracy only in that he held plaintiff to excessive bail. Plaintiff did not charge nor did he attempt to show that there was any fraud or other

corruption in the Justice of the Peace's hearing or in his decision on the merits.

At the end of the trial then a rather novel situation is presented. All five defendants are charged with a malicious prosecution of the plaintiff but the jury has found that the Justice of the Peace who convicted him and the Constable who arrested him were not part of the malicious conspiracy. It is without contradiction in the evidence that the supervisors sought the advice of the District Attorney before the prosecution was commenced. The contention of plaintiff's counsel that the District Attorney did not inform himself or make an adequate investigation of the facts and the law has not been overlooked. But it is to be noticed in that connection that there is no substantial evidence which supports plaintiff's contention in that respect.

■ In the Court of Appeals opinion, Lynn v. Smith, 3 Cir., 1960, 281 F.2d 501, at page 504, the Pennsylvania rule as to probable cause and lack of malice is set forth. As trial judge I am familiar with the rule and incidentally happened to be the trial judge in Psinakis v. Psinakis, 3 Cir., 1955, 221 F.2d 418, referred to by the Court of Appeals. In that case the issue of probable cause based on the advice of counsel was left to the jury, and the Court of Appeals reversed on the ground that such advice under the record in that case showed probable cause. In the instant case I am as well convinced, based upon all the evidence, that there was no substantial dispute for the jury on the issue of probable cause.

It is significant to note further that the supervisors did not act at all except under the advice of the District Attorney of Warren County, the public prosecutor, and not until the latter had checked back through the recorded deed and maps in an effort to ascertain the boundaries of the property involved and then investigated the applicable statute, was an information prepared by the District Attorney himself. The very age and nature of the statute plaintiff was charged with violating suggests the extent of the District Attorney's investigation. This is borne out by the analysis of the applicable law by Judge Flick in his opinion.

■■ In a suit for malicious prosecution the plaintiff has the burden of proving want of probable cause. Miller v. Pennsylvania R. R. Co., 1952, 371 Pa. 308, 89 A.2d 809. I am of the opinion that upon the overwhelming weight of the evidence plaintiff did not sustain this burden. I conclude further under all the evidence that, as a matter of law, defendants did have probable cause in acting upon the advice of the District Attorney. Psinakis v. Psinakis, supra; Miller v. Pennsylvania R. R. Co., supra; Hugee v. Pennsylvania R. R. Co., 1954, 376 Pa. 286, 101 A.2d 740. Compare too Stritmatter v. Nese, 1943, 347 Pa. 9, 31 A.2d 510.

■ A further note should be made of the conviction of plaintiff by the Justice of the Peace in a summary proceeding. This of itself, even though the appellate tribunal, Judge Flick, reversed the ruling, is ordinarily accepted as sufficient proof of cause to defeat an action for damages in an action for malicious prosecution. Shafer v. Meadville Tel. Co., 1930, 99 Pa.Super. 225. See also Restatement of Torts, Section 667(1).

### Lack of Jurisdictional Amount

On the issue of the amount in controversy, the amendment to 28 U.S.C.A. § 1332 of July 25, 1958 requires that in diversity of citizenship suits the jurisdictional amount must exceed the sum or value of $10,000 exclusive of interest and costs. This is a diversity case. It is conceded of course that in the normal case on the claim for damages made by plaintiff in excess of the jurisdictional amount, the trial judge does not usually consider an attack on the jurisdiction. It is appropriate to quote the Supreme Court, St. Paul Mercury Indemnity Co. v. Red Cab Co., 1938, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845. At pages 288–290 of 303 U.S., at page 590 of 58 S.Ct. the language is as follows:

" * * * The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction. * * * "

It is noticed that the last sentence of the Supreme Court opinion mentions that events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction. The size of the jury verdict returned against three of the defendants is not given any weight whatsoever in the decision disposing of this phase of the case. This court however is satisfied to a legal certainty from the proofs at the trial offered by the plaintiff alone, that plaintiff was never entitled to recover the sum of $10,000 and that his claim was therefore colorable for the purpose of conferring jurisdiction, and that this civil action should be dismissed.

It is necessary that the plaintiff's contentions and the evidence thereon as to damages be given careful consideration.

In plaintiff's trial brief and at the trial his counsel listed several possibilities as supporting an award for damages. Counsel set forth the claims for damages as being based on, (1) loss of liberty, (2) loss of time, (3) physical suffering or discomfort, (4) mental suffering from humiliation and injury to feelings, (5) injury to reputation and station in community in which plaintiff resides and does business, (6) risk of conviction,. (7) reasonable necessary expenses in securing release from arrest and defending prosecution, and (8) punitive damages.

In the Restatement of Torts, Section 670, the general damages permitted in a wrongful prosecution case, without strict proof thereof, are (a) a harm to his reputation which normally results from such an accusation, and (b) a distress which normally results from the initiation of such proceeding. In comment (a) it is stated, speaking of a plaintiff, that the harm done to his reputation by a criminal proceeding for an atrocious crime and distress caused by an accusation thereof is obviously greater than that caused by a prosecution for some trivial offense. The prosecution involved in this instant case can clearly be classified as a trivial offense.

It is noticed that when this suit was filed plaintiff Robert E. Lynn and his wife Alicia J. Lynn were joined as plaintiffs. Count 2 of the complaint filed March 2, 1959 alleges the wife to be a joint plaintiff as one of the owners of the fee property, being lots 40 and 41 of the Village of Pittsfield. Plaintiffs in the said Count 2 allege that as a result of defendants' conduct the plaintiffs were deprived of the profits of the sale of the property " * * * to their damage in the sum of $1,900.00 with interest thereon from June 13, 1956 * * * ", and $200 expenses as a result of the placing of the bench on their property. It is of course evidence that Alicia J. Lynn never did have a $10,000 case. She was never the victim of the alleged wrongful arrest and could only claim the damages as set forth immediately above. Not having the requisite jurisdictional

amount in her own right, the case was properly dismissed as to her. See Clark v. Paul Gray, Inc., 1939, 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001; Bell v. Mykytiuk, D.C.E.D.Pa.1955, 135 F.Supp. 167.

In Section 671 of the Restatement special damages are likewise set forth. Under (a) it is stated that plaintiff may recover from a harm resulting from any arrest or imprisonment suffered by him during the course of the proceedings. Under (b) and (c) the special damages permitted are the expenses which he has reasonably incurred in defending himself from the accusation, and any specific pecuniary loss which resulted from the institution of the proceedings.

It is apropriate to mention that the only evidence on damages was offered by the plaintiff Robert E. Lynn and his wife Alicia J. Lynn. The events preceding the arrest are important in a determination as to whether the defendants were actuated by malice. It is not a case in which a victim of an arrest is taken by surprise from the arms of his family in the nighttime. Plaintiff was not at all surprised at what took place. The merits of this case present nothing but a neighborhood dispute over a boundary line on a piece of real estate in a country community. Almost everyone in the area knew of the dispute between the supervisors and the plaintiff. It is well to recall that plaintiff's father, in 1949, permitted the dedication of certain premises as a public memorial to the members of the Armed Forces. When plaintiff inherited the property he initiated the issue as to the title to the ground on which the monument rested. The dispute boiled itself down to the question of the exact location of the boundary line. Conferences had been held. Letters had been written back and forth, sometimes by counsel. A final letter, plaintiff's exhibit 10, was written by plaintiff to the Secretary of the Supervisors under date of May 8, 1956. Plaintiff said in the letter, "At the suggestion of my attorney, (emphasis supplied) I hereby offer * * ". He then made an offer to deed the property to Pittsfield Township but in the offer he altered the terms of the memorial which his father had helped to create. Not for one moment in the letter did the plaintiff concede that the title was in anyone but himself. He then laid down an ultimatum. The terms of that were that the supervisors had fifteen days to accept his proposition and if it was not accepted then the supervisors had thirty days "to remove from my property, (emphasis supplied) * * * the monument, flagpole and shrubbery which is now located thereon." It is to be noticed at this point that the supervisors upon receipt of plaintiff's letter on May 8th, were faced with the dilemma of either accepting a revised memorial or removing the public property altogether. It was the defendant Danielson, a private citizen, who suggested to the supervisors that the concrete bench be placed upon the premises as an indication that the supervisors and the public generally intended to maintain the status quo. This was done and some little time thereafter plaintiff appeared and smashed up the bench. Plaintiff then had a conversation with Charles Anthony, the Constable, at which time he was informed that the supervisors were looking into the matter and undoubtedly would take some action. The next time plaintiff came into Pennsylvania was on the date of his arrest, June 18, 1956. He was fully prepared for the proceedings as he had his counsel with him. When the expected arrest took place plaintiff's counsel, Mr. Nicholson, was there and went with him to the Justice of the Peace, and within twenty minutes plaintiff had secured his bail from his business friend located in Pittsfield Township. He was not detained at the Justice of the Peace's for over 45 minutes all told on the evening of the arrest. He then came back for the trial before the Justice of the Peace as previously mentioned.

On the issue of the amount of the damages, if plaintiff is entitled to recover, he of course is entitled to recover all of his expenses. His total counsel fees came to $1,200. He lost a

maximum of three days from his employment. At his monthly salary rate this could not exceed $82.50. His mileage to and from Jamestown, New York, would not exceed $12. Thus his total special damages could not exceed an aggregate sum of $1,294.50. These are the items recoverable under the Restatement, Section 671(b).

As to any other specific pecuniary loss, none can be supported by the evidence. Under Section 671(a) of the Restatement plaintiff would have been permitted to offer evidence and to recover for any actual physical harm as a result of his arrest but none was claimed by plaintiff, nor was there any testimony concerning such a claim. Plaintiff did attempt to establish that he was prevented from selling the piece of property involved and thus was damaged to the extent of a loss of profits. However nothing indicated that the inability to sell this property was a direct result of the criminal prosecution. In the same tone he attempted to establish his inability to increase a mortgage already on the property. He was unable to produce any testimony by third persons to establish that a criminal prosecution, as opposed to the admitted title dispute in existence for several years prior to 1956, was the sole reason for the inability to raise money on this property. The only claim for damages for loss of profits relating to the sale of the real property was the sum of $1,900.

Turning then to general damages which might have been permitted plaintiff under Section 670 of the Restatement the proof is simply inadequate to support an award anywhere near the amount necessary in this case to aggregate a total claim of $10,000. The proof shows that plaintiff was insisting upon a settlement of the controversy. He committed a pure act of aggression in order to bring the case to a head. He expected the result. He stated that he was not under any distress of mind by reason of fear of conviction. He had perfect confidence in his case at all times. No medical witnesses were called by plaintiff.

By his own admission the proceedings did not cause him any embarrassment in his social life. The only fact he testified to regarding a harm to his reputation was the posting of articles of local newspapers on the bulletin board at plaintiff's place of employment. The newspapers followed the course of the proceedings. The postings on the bulletin board however could not have occurred over eight times as there were two newspapers and each carried articles not over four times. The plaintiff specifically ruled out any embarrassment because of the proceedings by his statement that his friends stuck by him. His words were, "I think I had a chance to explain myself and I think they stayed with me". Plaintiff did say however that he was embarrassed at work because he was criticized, "by saying I was trying to throw off a war memorial, which I wasn't." The dispute as to the title to the War Memorial ground was a matter of public interest and it was a factor leading up to the arrest, but the prosecution of itself did not cause the dispute in the first instance. The major controversy was the property dispute. Under all of the plaintiff's testimony, the arrest caused him the loss of a few days wages, some expenses, but the evidence in its best light and viewing it most favorably to plaintiff does not warrant a finding for plaintiff in damages beyond a negligible amount as general damages for any harm to his reputation or distress resulting from the initiation of the prosecution. Plaintiff's very appearance and manner indicated that he was an aggressive and strong minded individual. Until the bench was placed on the lot plaintiff had no easy method of bringing the dispute to a climax. He had been unable to get any action from the supervisors. It is apparent however that the bench gave plaintiff the opportunity which he had sought, that is to bring the dispute to a head. He seized upon it and was not surprised by his arrest. The point is that under this factual situation plaintiff cannot be heard to claim punitive damages.

894

■■ This court is satisfied to a certainty that from the proofs offered by plaintiff at the trial of his case he was never entitled to recover the jurisdictional amount. From the start his claim was therefore colorable for the sole purpose of conferring diversity jurisdiction. See the recent decision Matthiesen v. Northwestern Mutual Ins. Co., 5 Cir., 1961, 286 F.2d 775; see also a decision handed down by John W. McIlvaine, a judge of this court, on May 4, 1960, Diana v. Canada Dry Corp., 189 F.Supp. 280. To permit this plaintiff and his counsel to enlarge a neighborhood Justice of the Peace dispute over a boundary line into a federal case is simply to emasculate the diversity statute. Plaintiff never did have a $10,000 lawsuit. The diversity jurisdiction of the Federal court cannot be invoked simply by a demand made by a plaintiff in the addendum clause that the amount in controversy exceeds $10,000, when the proofs at the trial show to a legal certainty that an award of even one-half of the necessary jurisdictional amount would have been excessive. Such is this case. The evidence in this case requires a dismissal of this civil action even after the case has been tried. It will be so ordered.

### Plaintiff's Objections To Defendants' Bill Of Costs

■ Plaintiff's counsel has filed objections to certain of the items in defendants' bill of costs. Plaintiff's objection No. 1, as filed December 5, 1960, is sustained. Plaintiff's objection to items, Nos. 2 & 3, that is the reporter's charge for a copy of the pre-trial conferences, is overruled as it is believed that it is covered under 28 U.S.C.A. § 1920(2) as being a part of the stenographic transcript necessarily obtained for use in the case. Plaintiff's objection to item No. 4 is sustained and in any event that item has been withdrawn from defendants' bill by their counsel. Plaintiff's objections to items, Nos. 5, 6, & 7, are overruled and these bills are considered proper as they cover attendance of witnesses and sums reasonable and permitted under the statute.